ALPHA PORTLAND CEMENT CO. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. November 26, 1919.)

No. 2474.

1. INTERNAL REVENUE ⬤⇒9—EVIDENCE INSUFFICIENT TO SHOW INCOME WITHIN CORPORATION EXCISE TAX PLAN.

There was no income, within Corporation Excise Tax Law Aug. 5, 1909, § 38, where a corporation, pursuant to a scheme of recapitalization, organized another corporation, conveyed properties to it, constituting all its assets, received therefor its entire stock, except directors' shares, of greater par value than the price paid for the properties, distributed the shares, after formally valuing them at par, among its own stockholders, and then effected a merger between the two corporations.

2. TRIAL ⬤⇒139(1)—SUFFICIENCY OF EVIDENCE TO GO TO JURY.

Though one party's evidence, standing alone and unexplained, shows profits in a transaction, yet when explained by evidence for the other party, in no respect inherently unreasonable, improbable, or inconsistent with that for the first party, or shown unreliable, the whole evidence is susceptible only of the inference that there was no profit, there is no question of fact for the jury.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by the United States against the Alpha Portland Cement Company. Judgment for the United States, new trial denied, and defendant brings error. Reversed, and new trial granted.

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Louis H. Porter, of New York City, for plaintiff in error.

Ernest Harvey, of Philadelphia, Pa., for the United States.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. The defendant in error (the plaintiff below) sued to recover certain moneys which it claims were due from the plaintiff in error by way of taxes under the Corporation Excise Tax Law of August 5, 1909 (36 Stat. 112, c. 6, § 38), and recovered a judgment for the full amount claimed. There was no conflict in the evidence, and the facts, as distinguished from the inferences which it is claimed may be drawn therefrom, are not in dispute.

It appears that during the year 1909 the defendant purchased certain properties, the legal title to which was taken in the name of its president, as trustee. Later in the same year, pursuant to a plan for increasing the capital stock of the defendant, these properties were conveyed by the trustee to a corporation known as the Cement Manufacturing Company, which had been formed for the express purpose of thus acquiring and using them in carrying out the recapitalization scheme. The consideration of the conveyance was the issuance by the latter company to the trustee of its entire capital stock, except a few shares necessary, under the laws of the state where the company was incorporated, to be held by the directors. The stock thus issued to the trustee was immediately transferred by him to the defendant, which in turn distributed it among its stockholders, share for share. Thereupon, in furtherance of the recapitalization plan, a merger was effected between the defendant and the Cement Manufacturing Company. For purposes of the merger, the value of properties so conveyed to the Cement Manufacturing Company (which constituted all of its assets) was fixed at the same figure as that at which the trustee had conveyed them to that company; also, before the stock was distributed among the defendant's stockholders, it was formally valued by its directors at par. The par value of such stock greatly exceeded the price at which the property had originally been purchased by the defendant. The defendant did not include as income in the tax return, which it was required by law to make for that year, the apparent profit resulting from the difference between the price which it had originally paid for the properties and the price at which it had ostensibly sold them to the Cement Manufacturing Company. The government, however, when it learned of the transaction, or a part of it, took the position that the alleged profit—both the purchase and sale having taken place within the tax year of 1909—was taxable income of that year under the before-mentioned Act (Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054; Hays v. Gauley Mt. Coal Co., 247 U. S. 189, 38 Sup. Ct. 470, 62 L. Ed. 1061) and thereupon brought this action to recover the tax thereon.

[1] From the foregoing recital of facts, it is apparent that while, as a matter of form and of bookkeeping, the defendant did realize a very considerable profit during the tax year in question on the pur-

chase and transfer of these properties, yet in reality it made no profit whatever. The ultimate and real result of the various transactions was that the defendant purchased some properties at one figure, and in working out a plan of recapitalization valued them at a higher figure. The intermediary corporation, to which the legal title of the properties was conveyed by the trustee, was brought into being by the defendant for the express purpose of working out the recapitalization plan, and ceased to exist as a separate entity after that plan had been carried out. The defendant was no richer after the alleged sale than it was before, notwithstanding the book entries, resolutions of directors, transfers of title, etc. Viewed in this light, we think that it needs no argument to demonstrate that the case falls within the principle of the decisions of the Supreme Court in Southern Pacific v. Lowe, 247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142, and Gulf Oil Corp. v. Lewellyn, 248 U. S. 71, 39 Sup. Ct. 35, 63 L. Ed. 133. Indeed, it cannot be distinguished on principle from the decision of this court in Baldwin Locomotive Works v. McCoach, 221 Fed. 59, 136 C. C. A. 660. Under the above stated facts, considered as a whole, the defendant was therefore not liable for the tax which the government sought to recover in this suit.

[2] It is contended on behalf of the government, however, that there was a question of fact as to whether or not the defendant had realized a profit on the transactions, because one part of the evidence (that produced by the government), when standing apart from the rest and unexplained, showed that the defendant had purchased the property for one figure and then had sold it to another corporation at an increased figure. Hence it is argued that there was a jury question in the case, which the verdict has settled in accordance with the government's contention. The evidence, which explained the transactions and placed them in their true light, was brought out during the presentation of the defendant's case, and, except for some resolutions in the defendant's minute book (which were fully explained), was given by the same witness from whom the facts upon which the government relies were elicited. Moreover, his explanatory and supplemental version of the transactions is in no respect inherently unreasonable, improbable, or inconsistent with that given when called as a witness for the government; nor is there anything to indicate that it is otherwise unreliable.

In this situation, it was not permissible to consider only a part of the evidence, separate from that which supplemented and explained it, or to accept the former and discard the latter. It was necessary that it be taken as a whole. When thus considered, it was susceptible of only one inference, viz. that the defendant had in reality made no profit. Accordingly there was no question of fact for the jury to pass upon. We think, therefore, that the defendant's request for binding instructions should have been granted, and in declining to direct a verdict for the plaintiff the trial court committed error. It is proper to observe that, when the case was before the learned trial judge on a motion for a new trial, he entertained the same views as we have above expressed; but anticipating that, irrespective of whatever deci-

sion he might reach, the case would ultimately find its way into an appellate court, he declined to grant a new trial, so that the plaintiff would have the benefit in such court of the effect, if any, that the verdict of the jury might have on the case.

The judgment is reversed, and a new trial granted.