**INDUSTRIAL COTTON MILLS COMPANY, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3280.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1932.

Legh R. Page and R. E. Cabell, both of Richmond, Va., for petitioner.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and H. B. Hunt, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. The question presented is the right of the Industrial Cotton Mills, Inc., to carry forward as a deduction a loss sustained by the Blue Buckle Cotton Mills, Inc., in the year 1921 and deduct same in a consolidated return filed in behalf of the Industrial and the Blue Buckle for the year 1922 and in a return of the Industrial for the year 1923. The Board held that the Industrial and the Blue Buckle were affiliated during the first six months of 1922 and that the Blue Buckle was entitled to deduct losses sustained in 1921 from the income earned by it during this period of affiliation, but that a new taxpayer came into existence as a result of the merger of the two corporations, which occurred June 30, 1922, and that no deduction from income earned after that date was permissible on account of these losses.

The Blue Buckle was organized in 1920. During that year it entered into contracts for the purchase of cotton which in the year 1921 resulted in a loss of $468,356.82. Its total net loss of that year was $543,310.93. This loss resulted in financial embarrassment, and early in the year it elected as directors the members of a creditors' committee and placed them in charge of its business. In November, 1921, the Industrial was organized as a holding company. It took over all the stock of the Blue Buckle except certain preferred stock and all of the claims outstanding against that corporation, issuing its own stock for the claims and stock thus taken over. On June 30, 1922, a merger between the two corporations was effected under the laws of Virginia, as a result of which the holdings of stock in and claims against the Blue Buckle were extinguished and the property of the latter was vested in the Industrial. Non-par stock of the Industrial was issued in exchange for the preferred stock of the Blue Buckle which had not previously been acquired by the Industrial. The Industrial prior to the merger owned no property other than the obligations and stock of the Blue Buckle; and after the merger it neither owned nor operated any property except the property of the Blue Buckle acquired by it as a result of the merger.

For the year 1922 the Industrial filed a consolidated return for itself and the Blue Buckle in which it showed net income of $239,718.57 which it offset by a part of the net loss claimed by the Blue Buckle for the year 1921. For the year 1923 the Industrial sought to deduct from net income the remainder of the loss sustained by the Blue Buckle in the year 1921. The Board held that the two corporations were affiliated for the first six months of 1922 and that the Blue Buckle was entitled to deduct from its share of the income earned during that period a portion of the loss carried over from 1921, but that the Industrial was not entitled to file a consolidated return for the entire year or deduct therefrom any part of the 1921 loss of the Blue Buckle. As to the 1923 income of the Industrial, it held that this was not subject to deduction on account of such loss. The basis of the holding was that affiliation existed only up until the merger, that during affiliation the 1921 loss of the Blue Buckle was deductible only from its income and not from the consolidated income of the affiliated corporations, and that by the merger a distinct corporate entity was created which was not entitled to credit for prior losses sustained by the Blue Buckle.

We think that the decision of the Board sacrifices substance to form. There was throughout the years in question but one income-producing property and but one group of people who owned and operated it; i. e., the stockholders and creditors of the Blue Buckle, who as a result of the method of financing adopted became stockholders of the Industrial. The organization of the Industrial as a holding company and the subsequent merger amounted to no more than issuing

stock to creditors in lieu of their claims and changing the name of the corporation.

The case, in all of its material aspects, is governed by the decision of this court in Western Maryland Railway Company v. Commissioner of Internal Revenue, 33 F.(2d) 695, 697, which involved the right of a corporation organized upon a merger or consolidation to avail itself of a deduction on account of certain bond discount to which one of the merged corporations would have been entitled. The following language of the opinion in that case is peculiarly applicable here:

"In the first place, it is perfectly clear that, although there has been a reorganization and although the consolidated corporation is a distinct legal entity from those whose places it has taken, nevertheless, in all of its essential relationships, it occupies exactly the same position which they occupied. Its management is the same, its assets are the same, its stockholders are the same, and its obligations are the same, except that the floating indebtedness of the old corporation has been taken up by the first preferred stock of the new, a change which might have been effected by the old corporation without reorganization, and which manifestly can have no bearing upon the matter of bond discount. * * * After all, while there is a technical legal difference between the old and the new corporations, they are the same as a practical matter, both holding the same property and representing the same ownership, and it is a settled principle that 'courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.' Chicago, Milwaukee & St. Paul R. Co. v. Minneapolis Civic Ass'n, 247 U. S. 490, 501, 38 S. Ct. 553, 557, 62 L. Ed. 1229; Southern Pac. Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133.

"The rule just stated is of peculiar importance in tax cases; for, unless the courts are very careful to regard substance and not form in matters of taxation, there is grave danger on the one hand that the provisions of the tax laws will be evaded through technicalities and on the other that they will work unreasonable and unnecessary hardship on the taxpayer. It is instructive to note the many tax cases decided in recent years in which the courts have not hesitated to ignore corporate forms, and to decide the questions involved in the light of what the parties have actually done, rather than on the basis of the forms in which they have clothed their transactions. See Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Gulf Oil Corp. v. Lewellyn, supra; Alpha Portland Cement Co. v. U. S. (C. C. A. 3d) 261 F. 339; Appeal of A. J. Siegel, 4 B. T. A. 186; Appeal of H. E. Brubaker, 4 B. T. A. 1171. We think, therefore, that, as the new corporation, while technically a distinct legal entity, is to all practical intents and purposes a mere continuation of the old, it is entitled to the same deduction on account of amortized bond discount that the old corporation would have been entitled to, if the reorganization had not taken place."

It is true that ordinarily the loss sustained by one of a number of affiliated corporations cannot be carried forward and deducted from the consolidated return, but must be deducted only from the income of the corporation which has sustained the loss. Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128; Planters' Cotton Oil Co. v. Hopkins, 286 U. S. 332, 52 S. Ct. 509, 76 L. Ed. 1135; Commissioner v. Ben Ginsburg Co. (C. C. A. 2d) 54 F.(2d) 238. And on the same principle, loss sustained by one corporation prior to its merger with another cannot be availed of, we think, by the corporation resulting from the merger. This rule, however, is based upon the fact that the statute authorizes the carrying forward of the deduction only by the taxpayer who has sustained the loss; and a group of affiliated corporations, although a taxpaying unit, is not a taxpayer within the meaning of the section authorizing the deduction. To permit the deduction in the consolidated return of affiliates or in the return of a corporation succeeding to their rights by merger would open the door to tax evasion by permitting a corporation with taxable income to escape taxation by the simple expedient of acquiring a business which had sustained losses in past years.

But the rule has no application, we think, where there is in reality but one taxpayer, and the merger, as here, is with a mere holding company which owns no property except the stock and obligations of the company which produces the entire income. In such case the law should look through form to substance and treat the income in law, as it is in fact, as the income of the corporation which has sustained the loss. If the holding

company here, the Industrial, had earned any income during the period of affiliation other than the income earned by the operating company, the Blue Buckle, there would be reason for denying to it the right to deduct from same the prior loss of the Blue Buckle. If it had owned any business or any property other than the stock and obligations of the Blue Buckle, there would be reason for denying to the corporation resulting from the merger the right to deduct such loss from its income. But it earned no income other than that earned by the Blue Buckle, carried on no business other than that carried on by the Blue Buckle, and had no property other than the stock and obligations of the Blue Buckle which it held. It was the Blue Buckle which sustained the loss in 1921. It was the Blue Buckle which earned the income up until the merger in 1922, and it was the Blue Buckle, under a different name, which earned the income during the remainder of 1922 and during the year 1923. In other words, the same taxpayer that sustained the loss was the taxpayer that earned the entire income from which deduction is claimed.

While the corporation resulting from the merger succeeded to the rights of both of the merged corporations (Code of Va. § 3823), the fact of the matter is that, upon the merger, the function of the holding company was abandoned, and it was only business of the operating company which went forward. The situation brought about was not at all different from what it would have been if, instead of merging with the Industrial, the Blue Buckle had issued stock to the Industrial to the amount of claims held by it, and the Industrial had thereupon distributed this stock with the stock originally acquired among its stockholders and surrendered its charter. The fact that in the merger the operating company took the name of the holding company is immaterial. If the operating company had done no more than issue stock for outstanding claims and change its name, no one would contend that it could not deduct the 1921 loss. The fact that it has done the same thing, through the organization and merger of the holding company, ought not limit its rights; and we do not think that it does.

It follows that for the first six months of 1922 the Blue Buckle and Industrial should be treated as affiliated and should file a consolidated return. The corporation resulting from the merger should be treated as occupying the position of the Blue Buckle with right to deduction on account of losses sustained by that corporation in 1921. The decision of the Board of Tax Appeals will accordingly be reversed, and the case will be remanded for further proceedings not inconsistent with this opinion.

Reversed.