BRACY DEVELOPMENT, Co., Inc. *v.* Max MILAM,
DIRECTOR OF DEPARTMENT OF FINANCE AND ADMINISTRATION
FOR THE STATE OF ARKANSAS

5-5836                                                478 S.W. 2d 765

Opinion delivered April 3, 1972

[Rehearing denied May 8, 1972]

Smith, Williams, Friday, Eldredge & Clark by Byron M. Eiseman, Jr., and James C. Clark, Jr., for appellant.

Dewey Moore, Jr., for appellee.

J. Fred Jones, Justice. This is an appeal by Bracy Development Co., Inc. from an adverse decree of the Pulaski County Chancery Court in a suit by Bracy Development to void a corporate income tax assessment made by Max Milam, Director of Department of Finance and Administration for the State of Arkansas, hereinafter referred to as "director."

The question presented, under carefully stipulated facts, is whether a net operating loss carryover available to a corporation as a deduction for state income tax purposes under Ark. Stat. Ann. § 84-2016 (1) (Repl. 1960) is available to another corporation with which the first corporation has merged. The question is not answered by state statute or by prior decision of this court.

According to the stipulated facts, Bracy Realty, Inc. and Bracy Development Co., Inc. were separate domestic corporate entities having the same designated principal place of business and the same officers. Both corporations were primarily engaged in the same business of constructing public housing projects. During the period December 1, 1966, through July 31, 1968, Bracy Realty accumulated a net operating loss of $164,506.24. By August 1, 1968, Bracy Realty was near financial collapse and on that date it formed a legal, or statutory, merger with Bracy Devel-

opment, and Bracy Development emerged as the surviving corporation.

The record is silent as to when the two corporations were formed and as to the ownership of stock in Bracy Realty, but in Bracy Development's state income tax return for the fiscal year ending October 31, 1968, the $164,-506.24 operating loss accumulated by Bracy Realty was carried over by Bracy Development as a deduction under Ark. Stat. Ann. § 84-2016 (1) (Repl. 1960) which provides as follows:

"In addition to other deductions allowed by this law there shall be allowed as a deduction from gross income a net operating loss carryover under the following rules:

1. The net operating loss as hereinbelow defined for any year ending on or after the passage of this act and for any succeeding taxable year may be carried over to the next succeeding taxable year and annually thereafter for a total period of three (3) years next succeeding the year of such net operating loss, or until such net operating loss has been exhausted or absorbed by the taxable income of any succeeding year, whichever is earlier. The net operating loss deduction must be carried forward in the order named above.

(A) As used herein the term taxable income, or net income shall be deemed to be the net income computed without benefit of the deduction for income taxes, personal exemptions and credit for dependents. The net income of the taxable period to which the net operating loss deduction, as adjusted, is carried, shall be the net income before the deduction of Federal income taxes, personal exemption and credit for dependents, and such income taxes, exemption and credits shall not be used to increase the net operating loss which may be carried to any other taxable period.

2. As used in this subsection the term 'Net operating loss' is hereby defined as the excess of allowable deductions over gross income for the taxable year, subject to the following adjustments. * * *"

The director disallowed the deduction and assessed Bracy Development an additional tax in the amount of $8,075.12. The chancellor found that the operating loss carryover available to Bracy Realty as a deduction against its future years' income under the statute, was personal to Bracy Realty and expired when Bracy Realty ceased to exist. The chancellor found that Bracy Realty's operating loss was not available to Bracy Development as a carryover deduction and the chancellor upheld the validity of the assessment. The point on which Bracy Development relies for reversal is designated in its brief as follows:

"The chancellor erred in his determination that Bracy Development Co., Inc. was not entitled to a deduction as permitted by Ark. Stat. Ann. § 84-2016 (1) for pre-merger losses of Bracy Realty, Inc."

The appellant and the appellee both recognize that in Arkansas we do not have a state statutory provision comparable to §§ 381 and 382 of the Federal Internal Revenue Code expressly permitting such carryover by a surviving corporation following a merger. The appellant argues, therefore, that in the absence of such statutory provision we should follow prior federal decisions and regard the resulting or surviving corporation as a union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations, of its constituents, and permit the surviving corporation to utilize the unused net loss carryovers of its component corporations.

The appellee argues that in the absence of specific statutory authority to the contrary, we should hold the taxpayer to the strict burden of proving his right to a tax deduction under the same strict rule of construction applicable to tax exemptions, and that we should recognize the deductible net loss carryover as a matter of statutory grace available only to the corporation sustaining the loss. The appellee contends that the net loss carryover that would have been available to Bracy Realty in the case at bar, was personal to Bracy Realty and was not available as a deduction against income earned by Bracy Development following the merger.

Following statutory merger or consolidation of domestic corporations, Ark. Stat. Ann. § 64-705 C, D, E, (Repl. 1966) provides as follows:

"C. Such surviving or new corporation shall have all the rights, privileges, immunities and powers and shall be subject to all the duties and liabilities of a corporation organized under this act [chapters 1-10 of this title].

D. Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporation shall not revert or be in any way impaired by reason of such merger or consolidation.

E. Such surviving or new corporation shall henceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation."

The appellant points to three federal court decisions, *Newmarket Mfg. Co. v. United States,* 233 F. 2d 493 (1st cir. 1956); *Helvering v. Metropolitan Edison Co.,* 306 U. S. 522 (1939) and *Stanton Brewery v. Comm'r of Internal Revenue,* 176 F. 2d 573 (2d cir. 1949) in support of its argument. In the *Newmarket* case an operating loss

carry-back was involved and we agree with the court's observation in that case that, "an issue of this sort peculiarly lends itself to logic-chopping, finespun distinctions, and dubious arguments by analogy." In *Newmarket* a Massachusetts corporation engaged in the business of weaving synthetic fibers, formed a wholly owned subsidiary corporation under the laws of Delaware and then merged with the Delaware corporation in order to avoid the application of a Massachusetts franchise tax on goods sold in New York. The court observed in *Newmarket* that after the merger everything remained the same as before except the corporation had changed its domicile from Massachusetts to Delaware. In holding that the new corporation was entitled to the refund claimed through net operating loss carry-back, the court distinguished the merger in *Newmarket* from mergers in other cited cases by pointing out that in *Newmarket* the merger was *statutory* and did not have the results of allowing *Newmarket* to obtain a carry-back in refund that otherwise would have been unavailable. The court also observed that the government placed undue emphasis on the term "taxpayer."

In the 1939 case of *Helvering* v. *Metropolitan Edison Co., supra,* a parent corporation formed a number of subsidiary electric power producing corporations and guaranteed the payment of the bonded indebtedness of the subsidiary corporations. The subsidiaries sold all the energy they produced to the parent corporation and after the bonded indebtednesses were paid, they transferred all their assets to the parent corporation. The parent corporation deducted from its gross income the unamortized discount and expense of one of its subsidiaries. The Commissioner of Revenues ruled against the deduction and determined a deficiency. The Board of Tax Appeals sustained the Commissioner and the Circuit Court of Appeals reversed the Board. The question in *Helvering* was whether or not the transaction between the corporations amounted to a *sale* or a *true merger*. On certiorari the United States Supreme Court affirmed the Circuit Court of Appeals and held that the transaction amounted to a statutory merger. The Commissioner in *Helvering* conceded that if there had been a true merger or consolidation whereby the identity of the corporation issuing the bonds continues in the successor and the latter became liable

for the debts of the former by operation of law, the successor could deduct amortization of discount and expense in respect to the bonds issued by its predecessor as well as amortized discount and expense on any of such bonds retired prior to maturity.

The 1949 case of *Stanton Brewery* v. *Comm'r of Internal Revenue, supra,* involved the merger of a brewery holding corporation with an *operating* brewery company and the new corporation took the name of the operating company. The new company deducted the unused excess profit credits of its component corporation. The issues turned upon the nature of the merged corporations after the merger and involved the question of which corporation swallowed up the other. The court in allowing the credit regarded the "resulting corporation" as the union of component corporations into an all-embracing whole which absorbed the rights and privileges, as well as the obligations of its constituents.

The appellee has cited no court decisions directly in point with the question presented here, but the appellee does cite decisions in support of its argument that the burden rests on the taxpayer to show that he clearly qualifies for an exemption under a specific statutory provision granting an exemption. The appellee then argues that deductions and exemptions fall under the same classification, and that Arkansas has no statutory provision granting the deduction claimed by Bracy Development in the case at bar.

Certainly there are a number of state and federal court decisions tending to sustain the appellee's position. In the 1958 case of *Fall River Canning Co.* v. *Wisconsin Dept. of Taxation,* 3 Wis. 2d 632, 89 N.W. 2d 203, five vegetable canning corporations merged and retained the name "Fall River Canning Co." which was the name of one of the merging corporations. Apparently the Wisconsin statute in 1958 contained the same or similar language as the present § 71.06 pertaining to "Corporation business loss carry forward" which is as follows:

". . . For the purposes of this section, net business income shall consist of all the income attributable

to the operation of a trade or business regularly carried on by the *taxpayer,* less the deduction of business expenses allowed in s. 7104." (Our emphasis).

In *Fall River,* all the corporations had sustained net business losses prior to the merger. Following the merger Fall River reported carry-back deductions on its income tax return which were denied by the Revenue Commissioner; *Fall River* paid under protest and sued for refund. The trial court sustained the Commissioner and in affirming the trial court, the Supreme Court of Wisconsin refused to follow the federal and other state court decisions and held that under the Wisconsin statute only the taxpayer who sustained the loss is entitled to the deduction. The Wisconsin court held that after statutory merger, even though the surviving corporation succeeds to the liabilities and obligations of the merged corporations to the same extent as though it had incurred them in the first instance, such a circumstance does not constitute the survivor as the corporation incurring the liability. The court held that the taxes *Fall River* paid under protest were paid as obligations of the merged corporations and held in effect that the carryover provision privilege was a matter purely of legislative grace available only to the corporation that paid the taxes. The Wisconsin court also pointed out that tax statutes are to be strictly construed against the granting of tax deduction privileges and held that it would require a specific and unambiguous provision of the Wisconsin statute to accomplish the results contended for by the appellant.

While *Lisbon Shops, Inc.* v. *Koehler,* 353 U.S. 382, was decided by the United States Supreme Court after the 1954 enactment of §§ 381 and 382 of the Internal Revenue Code, the contentions of the parties in that case were so near identical to the contentions in the case at bar, we quote from *Koehler* as follows:

"In support of its denial of the carry-over, the Government argues that this statutory privilege is not available unless the corporation claiming it is the same taxable entity as that which sustained the loss. In reliance on *New Colonial Co.* v. *Helvering,* 292

U.S. 435, and cases following it, the Government argues that separately chartered corporations are not the same taxable entity. Petitioner, on the other hand, relying on *Helvering* v. *Metropolitan Edison Co.,* 306 U.S. 522, and cases following it, argues that a corporation resulting from a statutory merger is treated as the same taxable entity as its constituents to whose legal attributes it has succeeded by operation of state law. However, we find it unnecessary to discuss this issue since an alternative argument made by the Government is dispositive of this case. The Government contends that the carry-over privilege is not available unless there is a continuity of business enterprise. It argues that the prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss. Only to that extent is the same 'taxpayer' involved."

The court in *Koehler* concluded that the petitioner was not entitled to a carryover since the income against which the offset was claimed was not *produced substantailly by the same business which incurred the losses.* The court also pointed out in *Koehler* that three of the merged units were still encountering losses and that had they not merged, they would not have been entitled themselves to carryovers.

It might reasonably be contended that the alternative argument in *Koehler* is unavailable in the case at bar because the Arkansas Legislature has enacted no such provision as did the Congress in §§ 381 and 382 of the Internal Revenue Code, making available to surviving corporations following a merger the net loss carryover deductions accumulated by the constituent corporations. But in *Good Will Distrib. (Northern), Inc.* v. *Currie,* 251 N.C. 120, 110 S.E. 2d 880, the North Carolina Supreme Court took note that the court in *Koehler* denied the carryover because the income against which the offset was claimed was not produced by substantially the same businesses which incurred the losses, and on the theory that the plaintiff was not the "same taxable entity" as the corporations which suffered the loss. The North Carolina court then pointed out that the United States Supreme Court in

*Koehler* did not reject the separate entity theory in express terms, but chose to place the decision on other grounds. The North Carolina Court then said.

"We do not reject that theory. There are situations in which justice may well require its application. But we adhere to the reasoning in the Koehler case as the basis for decision in the case before us."

After further pointing out that the *Koehler* case rested on a lack of "continuity of business enterprise," the North Carolina court said:

"This expression has a definite and well defined meaning. There is continuity of business enterprise when the income producing business has not been altered, enlarged or materially affected *by the merger.*"

The North Carolina court in *Good Will Distrib., supra,* in distinguishing that case from *Industrial Cotton Mills Co.* v. *Comm'r of Internal Revenue,* 61 F. 2d 291, (4th cir.) [a federal court case arising in North Carolina], pointed out that in the *Cotton Mills Co.* case a corporation engaged in textile business suffered substantial economic loss and could not pay its creditors. A holding company was organized to avert financial disaster and the creditors were induced to take stock in lieu of their claims. The resulting corporation brought forward the pre-merger economic loss of the constituent manufacturing company as a deduction from post-merger net income. This was allowed by the court and in that case (*Cotton Mills*) the court said:

"If it had owned any business or any property other than the stock and obligations of the (constituent corporation), there would be reason for denying to the corporation resulting from the merger the right to deduct such loss from its income."

The North Carolina court in *Good Will Distrib.* then continued:

"Where there has been a merger of corporations, the resulting corporation may not deduct from its post-

merger net income the pre-merger economic loss of its constituent corporations unless there is a 'continuity of business enterprise' as above defined."

The court then concluded in *Good Will Distrib.* as follows:

"The facts in this case are analogous with those in the Koehler case. Before the merger the three corporations operated in separate territories, though somewhat overlapping, made separate incomes and filed separate income tax returns. By virtue of the merger a larger and more expanded business came into being and included all of the former income producing businesses. There was no continuity of the business of either of the constituent corporations. By reason of the merger a new and more extensive enterprise has emerged. This new enterprise did not suffer the loss and cannot claim a deduction therefor.

As was said in the former opinion of this Court in the instant case, the enactment of loss carry-over legislation by the General Assembly was purely a matter of grace. The provision should not be 'construed' to give a 'windfall' to a taxpayer who happens to have merged with other corporations.' Its purpose 'is not to give a merged taxpayer a tax advantage over others who have not merged.' Libson Shops, Inc. v. Koehler, supra."

See also *Holly Farms Poultry Industries, Inc.* v. *Clayton,* 176 S.E. 2d 367.

Thus it appears, that in the absence of specific statutory provision for the allowance or disallowance of the net operating loss of a constituent corporation as an income tax deduction to the surviving corporation in case of a statutory merger or consolidation, two separate theories have been adopted by the courts in dealing with the problems. One is the "same or separate taxable entity" theory as followed by the Wisconsin court in *Fall River Canning Co., supra;* and the other is the "continuity of business enterprise" theory as followed by the federal courts in the *Newmarket, Helvering* and *Stanton* cases, *supra.*

We think the better procedure, however, is that followed by the North Carolina court where the "separate taxable entity" theory is not rejected in a proper case, but the "continuity of business enterprise" theory is followed in a proper case. We disagree with the chancellor in the case at bar and hold that the "continuity of business enterprise" theory should apply under the facts of this case.

Perhaps we could have reached our decision with less difficulty if more of the facts had been stipulated, so we make clear that we do not go so far as to say that in the absence of further statutory clarification, the net business loss suffered by *any* corporation, may be carried over as a state income tax deduction by *any* other corporation with which the first corporation may merge or consolidate. But, under the stipulated facts in the case at bar, Bracy Realty and Bracy Development have all the earmarks of "family" corporations with common stock ownerships prior to the merger. The purpose of the merger, and as for that matter, the purpose of the separate entities, are not clear from the record before us. It is clear, however, that Bracy Realty lost money prior to the merger and Bracy Development made money after the merger, and that both corporations were engaged in the same type, if not identical, business. It is clear that the deduction claimed by Bracy Development would have been available to Bracy Realty had there been no merger or if Bracy Development had merged with Bracy Realty rather than the other way around. Under the stipulated facts it would appear, therefore, that following the statutory merger the business of Bracy Development was not altered, enlarged or materially affected by the merger but that it constituted, or at least included a continuation, of the business enterprise of Bracy Realty, but on a much sounder financial basis, and almost to the exclusion of separate entities.

The decree is reversed.

HARRIS, C.J., and GEORGE ROSE SMITH., J., dissent.