Walter SKELTON, Assistant Director of Revenues *v.*
B. C. LAND COMPANY, INC.

74-67                                                513 S.W. 2d 919

Opinion delivered July 15, 1974

[Rehearing denied October 14, 1974.
Supplemental opinion P. 967-A.]

*Walter Skelton, Karl D. Glass, John F. Gautney, Terry Little, J. R. Nash, Harlin Ray Hodnett,* for appellant.

*Gordon, Gordon & Eddy,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant made an assessment against appellee of $18,474.08 for income taxes for 1969 and 1970 because of his disallowance of a net operating loss carryover of B. C. Gin Company claimed by B. C. Land Company, Inc., the survivor in a merger of the two corporations, which took place right after July 31, 1969. Thereafter appellee brought this suit to have the assessment set aside. The chancery court held that appellee was entitled to the net operating loss carryover and set the assessment aside. We reverse.

The facts are undisputed. B. C. Land Company, Inc., B. C. Gin Company and B. C. Seed & Mercantile Company were all corporations. The Land Company was incorporated in 1917 and the Gin Company in 1937. J. G. Hoyt, Sr. owned all the stock in both corporations. J. G. Hoyt, Jr. became the sole stockholder of the land company in 1958, by acquiring the interest of a brother, after their father's death. He owned over 95% of the stock at the time of the merger, having given a few shares to his son. At the time of the merger the land company owned about 7,000 acres of land, which was its principal asset. Prior to the merger this corporation's principal function was the production of crops on this land, most of which was rented to tenants who paid crop share rentals. The gin company operated several gins. B. C. Seed & Mercantile Company conducted a grain elevator and warehousing operation and processed and stored soybeans and other grains produced on the farm land. All these operations were supported by the 7,000 acres of land. There was a two to three thousand acre cotton allotment on the land company

lands. It is not unusual for the owner of 2,000 acres to own a gin in connection with his farming operation and most plantation owners that appellee's vice president and accountant knew had one or two gins.

Prior to the merger, the principal office of all three corporations was in one location in Leachville, where books of account of all three operations were kept by Mrs. Winnie Pierce. There was no change in the administrative setup after the merger. After the merger, a separate set of records for the gin operation was kept in order that the profitability of the gins could be known.

At the time of the merger, B. C. Gin Company had unused net operating loss carryovers of $53,000 for its fiscal year ending July 31, 1968 and $295,518 for the year ending July 31, 1969. These were claimed as a deduction on the income tax returns of B. C. Land Company for the calendar year of 1969 and subsequent years. The books on the gin operation reflected that the profits thereon after the merger would have been more than enough to absorb the carryovers had the gin company continued in existence. Due to a subsequent merger, there is now only one corporation instead of three, with Hoyt, Jr. the only stockholder in the family enterprise except for his son.

Prior to the mergers, each of the corporations was utilized for a different purpose. Each of their purposes was considered by appellee, according to its vice president and certified public accountant (the only witness who testified), as a different activity in one farming operation. The avowed purpose of having had three separate corporations was to take advantage of federal income tax laws under which the first $25,000 in taxable income of each corporation was subject to a very low federal income tax rate. The merger resulted from the desire of the principal owner of the three corporations to simplify his business operations. Appellant considers the two corporations involved here as being engaged in two different types of business, i.e., farming on the one hand, and the ginning of cotton on the other. He took the position that the business of the survivor had been altered, enlarged and materially affected by the merger. There is no evidence that

the land company had ever engaged in ginning cotton or that the gin company had ever engaged in the growing or production of crops. The merger with the seed and mercantile company has no bearing on the issue here.

We have no statute allowing the survivor in a corporate merger to take advantage of a net operating loss carryover of a merged corporation. The only authority in this state is found in the case of *Bracy Development Company* v. *Milam,* 252 Ark. 268, 478 S.W. 2d 765. The only significant difference in that case, where we held that the survivor was entitled to the benefit of such a deduction and this one, was that there was no question about the two corporations in Bracy having been engaged primarily in the same business. This primary business was construction of public housing projects. We think this case is governed by what we said in *Bracy.*

Inasmuch as appellee relies to some extent upon cases we reviewed in *Bracy,* we will not undertake a complete treatment of these cases. We did extensively review many supporting the opposing views in that case and reached the following conclusions:

> We think the better procedure, however, is that followed by the North Carolina court where the "separate taxable entity" theory is not rejected in a proper case, but the "continuity of business enterprise" theory is followed in a proper case. We disagree with the chancellor in the case at bar and hold that the "continuity of business enterprise" theory should apply under the facts of this case.

In reaching that conclusion (there being no specific statute on the subject), we expressed a decided preference for the treatment of the question by the North Carolina courts, which do not reject the "separate entity" theory, under which appellee would be totally barred from claiming the loss in any event. Consequently, this case turns upon whether the merger resulted in a continuity of business enterprise.

We found such a continuity in *Bracy,* where both the constituent corporations had engaged, prior to merger in the same type, if not identical, business. We made it quite clear that the deduction was allowable in the Bracy case because, following the statutory merger, the business of the survivor

"was not altered, enlarged, or materially affected by the merger but that it constituted, or at least included a continuation, of the business enterprise of [the merged corporation] but on a much sounder financial basis, and almost to the exclusion of separate entities." If it were not for the qualification that the business of the survivor was not altered, enlarged or materially affected, we might well say the chancellor was not in error in drawing an inference from the facts in this case that the remaining criteria of *Bracy* had been met. But we cannot say he was warranted in reaching the conclusion that, on the evidence presented, the business of B. C. Land Company was not altered, enlarged or materially affected.

In viewing this matter, we must say that appellee failed to meet its burden of proof in this respect. Although we have never expressly held that the taxpayer has the burden of showing his entitlement to a tax deduction, we have many times held that one (particularly a plaintiff) claiming an exemption from taxation bears the burden of proving clearly that he is entitled to it and to bring himself clearly within the terms of such conditions as may be imposed by statute. *Hervey v. Southern Wooden Box,* 253 Ark. 290, 486 S.W. 2d 65; *Hervey v. International Paper Co.,* 252 Ark. 913, 483 S.W. 2d 199; *C.J.C. Corporation v. Cheney,* 239 Ark. 541, 390 S.W. 2d 437; *Missouri Pacific Hospital Assn. v. Pulaski County,* 211 Ark. 9, 199 S.W. 2d 329; *Wiseman v. Town of Omaha,* 192 Ark. 718, 94 S.W. 2d 116; *Wiseman v. Madison Cadillac Co.,* 191 Ark. 1021, 88 S.W. 2d 1007, 103 A.L.R. 1208. Reason and the decided weight of authority dictate the application of the same rule to one claiming a deduction, since both exemptions and deductions are privileges allowed merely as matters of legislative grace. *White v. United States,* 305 U.S. 281, 59 S. Ct. 179, 83 L. Ed. 172 (1938); *Palmer v. Commission of Revenue and Taxation,* 156 Kan. 690, 135 P. 2d 899 (1943); *Christopher v. James,* 122 W. Va. 665, 12 S.E. 2d 813 (1941); *Fennell v. South Carolina Tax Commission,* 233 S.C. 43, 103 S.E. 2d 208 (1958); *Arizona State Tax Commission v. Phelps Dodge Corp.,* 53 Ariz. 252, 88 P. 2d 79, 121 A.L.R. 1458 (1939); *Brosnan v. Undercofler,* 111 Ga. App. 95, 140 S.E. 2d 517 (1965); 85 C.J.S. 772, Taxation Sec. 1099; 71 Am. Jur. 2d 804, State and Local Taxation Sec. 518. See also *Commissioner of Corporation and Taxation v. Adams,* 316 Mass. 484, 55 N.E. 2d 697 (1944); *Southern Soya Corporation v.*

*Wasson,* 252 S.C. 484, 167 S.E. 2d 311 (1969). Deductions from gross income in income tax statutes are in the nature of exemptions, so the general rule as to the burden on the taxpayer is applicable. *Bigelow* v. *Reeves,* 285 Ky. 831, 149 S.W. 2d 499 (1941); *Tupelo Garment Co.* v. *State Tax Commission,* 178 Miss. 730, 173 So. 656 (1937). Although an income tax case was not involved, we have tacitly accepted the idea that a deduction is in the nature of an exemption in the application of the rule as to the burden on the taxpayer. See *Bangs* v. *McCarroll,* 202 Ark. 103, 149 S.W. 2d 53. This is the burden the taxpayer had in this case. Its proof falls far short of a showing that the addition of the business of ginning cotton did not alter, enlarge or materially affect the business of B.C. Land Company. Appellant takes the position that the business was not affected because both operations constituted farming. The ordinary and commonly accepted meaning of the word farming is the act or business of cultivating land (Webster's New International Dictionary, 2d Ed); the business of operating a farm (The Random House Dictionary of the English Language). Be that as it may, appellee had never engaged in the ginning of cotton prior to the merger and it seems to us that the addition of this operation materially extended its business, which had previously consisted only of the production of crops.

Since we preferred the "continuity of business enterprise" concept in *Bracy* as expressed in North Carolina in *Good Will Distributors (Northern)* v. *Currie,* 251 N.C. 120, 110 S.E. 2d 880, we should look to that case in evaluating the evidence here. When we do, the conclusion that appellee is not entitled to the deduction under the evidence here seems inescapable. In that case the three merged corporations (of which the appellant there was one) had all been engaged in the distribution of books through independent contractors and franchise dealers. The kind of business was identical, but the operations were in different territories with some overlapping. After the merger the same character of business was continued in the same territories. The North Carolina court said there was a continuity of business enterprise when the income producing business has not been altered, enlarged, or materially affected by the merger. It illustrated the meaning by discussing two cases. In the first, *Newmarket Manufacturing Co.* v. *U.S.,* 233 F 2d 493 (1 Cir., 1956) there was a merger of a

parent corporation into its wholly owned subsidiary, created for that purpose. The subsidiary had no business until after the merger. Therefore, the court, in that case, held that the income producing business was unchanged by the merger because in substance there was no change in business but only a change of name. In the second, *Industrial Cotton Mills Co.* v. *Commissioner,* 61 F 2d 291 (4 Cir., 1932), a corporation operating a textile manufacturing business was merged into a holding company organized to avoid a financial disaster for the merged corporation by inducing its creditors to accept stock of the holding company in lieu of their claims. Post-merger deduction of the losses of the manufacturing corporation from the post-merger income of the resulting corporation was allowed. Both cases are clear illustrations of the meaning of "continuity of business enterprise." While we found that meaning sufficiently broad to embrace the Bracy merger, we cannot expand it to encompass the B. C. merger.

It is interesting to note that in *Industrial Cotton Mills* the court of appeals of the Fourth Circuit said that if the resulting corporation had owned any business or property other than the stock and obligations of the constituent corporation, there would be reason for denying the resulting corporation the right to deduct such loss from its income. It is very significant that the *Good Will* court reversed the trial court's holding on stipulated facts that there was a continuity of business enterprise. That court said:

> The facts in this case are analogous with those in the Koehler case. Before the merger the three corporations operated in separate territories, though somewhat overlapping, made separate incomes and filed separate income tax returns. By virtue of the merger a larger and more expanded business came into being and included all of the former income producing businesses. There was no continuity of the business of either of the constituent corporations. By reason of the merger a new and more extensive enterprise has emerged. This new enterprise did not suffer the loss and cannot claim a deduction therefor.

> As was said in the former opinion of this Court in the instant case, the enactment of loss carry-over legislation by the General Assembly was purely a matter of

grace. The provision should not be "construed to give a 'windfall' to a taxpayer who happens to have merged with other corporations." Its purpose "is not to give a merged taxpayer a tax advantage over others who have not merged." *Lisbon Shops, Inc.* v. *Koehler,* supra.

Since we cannot agree that appellee has brought itself within the conditions essential to allowance of the net operating loss carryover of B. C. Gin Company, the decree of the chancery court is reversed and appellee's action is dismissed.

BYRD and HOLT, JJ., dissent.

## Supplemental Opinion on Denial of Rehearing delivered October 14, 1974

1. TAXATION—DEDUCTIONS FOR LOSSES—CONTINUITY OF BUSINESS ENTERPRISE.—There is a continuity of business enterprise with respect to the right of a new corporation to deduct from post-merger income the economic loss of its constituent corporation when the income producing business has not been altered, enlarged or materially affected by the merger.

2. TAXATION—DEDUCTIONS FOR LOSSES—SCOPE OF STATUTE.—Surviving corporation could not claim the operating loss carryover of the submerged corporation as an income tax deduction where it failed to bring itself within the statutory provisions authorizing it.

JOHN A. FOGLEMAN, Justice. Appellee, on petition for rehearing, aptly summarizes its very forceful argument thereon in stating its point to be relied on thus:

A rehearing should be granted and the holding of the lower court affirmed because *Lisbon Shops* v. *Koehler,* and the cases following that decision hold that the losses of a loss corporation, which has merged into another corporation, may be carried over and deducted, for income tax purposes, if the "bundle of assets" of the loss corporation produces profits in post merger years from a continuation of the business that the loss corporation was engaged in.

In its brief, great reliance is placed by appellee upon language of the opinion in *Lisbon* v. *Koehler,* 353 U.S. 382, 77 S. Ct. 990, 1 L. Ed. 2d 924 (1957), partly because some of the reasoning in that opinion was relied upon by the North

Carolina Supreme Court in *Good Will Distributors (Northern)* v. *Currie*, 251 N.C. 120, 110 S.E. 2d 880 (1959). In *Good Will*, the concept of "continuity of business enterprise" was applied in determining when the "operating loss carryover" of a submerged corporation could be taken by the surviving corporation as an income tax deduction. Appellant also argues, however, that both *Newmarket Manufacturing Co.* v. *U.S.*, 233 F. 2d 493 (1 Cir. 1956) and *Industrial Cotton Mills Co.* v. *Commissioner*, 61 F. 2d 291 (4 Cir. 1932) discussed by the *Good Will* court and by us in our original opinion can be distinguished and that we should allow B. C. Land Company to take the deduction of the "operating loss carryover" of B. C. Gin Co. by following other progeny of *Koehler*, some of which had been cited by the parties in *Bracy Development Company* v. *Milam*, 252 Ark. 268, 478 S.W. 2d 765. Appellee, in its original brief, first argued that the "continuity of business enterprise" doctrine mandated the allowance of the deduction because premerger activities of B. C. Land Co. and B. C. Gin Co. were related activities of a common farming enterprise. Appellee also argued, however, that not only was the business of the two merged corporations substantially identical but the "continuity of business enterprise" theory required that the deduction be allowed if the income against which the premerger loss was offset was substantially the same operation which suffered the loss. While our emphasis in the original opinion was directed toward the first argument, we rejected both and reject them now. Furthermore, we do not agree with appellee that both *Koehler* and *Good Will* would have been decided favorably to the taxpayer if the same operations which had been conducted by loss corporations had generated profits in postmerger years to offset the losses claimed. And lastly, we do not consider that we should look only to the ginning operation to see whether that business was altered, enlarged or materially affected by the merger, as appellee suggests.

In denying the petition for rehearing we need not indulge in any attempt to distinguish the cases cited in appellee's brief or to analyze the rationale of *Koehler*. This is because our decided preference for the North Carolina treatment of the problem expressed in Bracy foreclosed those considerations. As we said in our original opinion in the instant

case, our result was governed by what we *said* in *Bracy*. We did not say that it was governed by the *result* in *Bracy*. There we held, substantially, that the deduction was allowable because of the coexistence of four standards:

1. Common stock ownerships prior to merger.

2. The merged corporation and the survivor were engaged in the same type, if not identical, business.

3. The deduction would have been available to the merged corporation.

4. The business of the survivor was not altered, enlarged or affected by the merger; it constituted, or at least included a continuation of the business enterprise of the merged corporation on a much sounder financial basis.

We did not say all four of these standards must be met in every case; however, we did take the position that the "separate taxable entity" theory followed by the Wisconsin courts would be applicable in a proper case and that the "continuity of business enterprise" theory would be followed in a proper case. We applied our interpretation of the North Carolina cases both in our original opinion and in *Bracy*. Our reexamination of this interpretation leads us to the conclusion that it was correct. Because of our deliberate choice in *Bracy* to follow the treatment of the question by the North Carolina courts, we have confined our re-examination to the decisions of those courts.

In the principal case *(Good Will)* the rule was stated thus:

Where there has been a merger of corporations, the resulting corporation may not deduct from its post-merger net income the pre-merger economic loss of its constituent corporations unless there is a "continuity of business enterprise" as above defined.

The argument between appellee and appellant arises from differences as to how "continuity of business enterprise" was "above defined." The *Good Will* court said that the expression had a definite and well-defined meaning, i.e.:

There is a continuity of business enterprise when the in-

come producing business has not been altered, enlarged or materially affected *by the merger.*

The North Carolina court then illustrated by reference to two cases. In the first *(Newmarket Manufacturing Co. v. U.S., supra)* the court said that, in substance, there was *no* change in business, only a change in name. The surviving corporation, prior to the merger, owned no property (except for the proceeds of the issuance of its entire capital stock to the subsequently merged manufacturing corporation) and engaged in no business. Consequently, said the North Carolina court, the income producing business was unchanged by the merger.

In the other case *(Industrial Mills)* a manufacturing corporation on the brink of financial disaster was merged into a holding company organized to rescue the first corporation by inducing its creditors to accept stock. Premerger losses of the merged corporation were allowed as a deduction. The North Carolina court quoted from this case as follows:

> If it had owned any business or any property other than the stock and obligations of the constituent corporation, there would be reason for denying to the corporation resulting from the merger the right to deduct such loss from its income.

Our interpretation of *Good Will* and our holding that the North Carolina rule would not permit the deduction of B. C. Gin Company's operating losses are clearly sustained by *Holly Farms Poultry Industries, Inc.* v. *Clayton,* 9 N.C. App. 345, 176 S.E. 2d 367 (1970), cited in *Bracy* but not in our original opinion in this case. *Holly Farms* was decided in reliance upon *Good Will* and certiorari was denied by the North Carolina Supreme Court. In order that the effect of that case and the proper application of the North Carolina rule be clearly understood, we fully state our analysis of the opinion of the North Carolina Court of Appeals, viz:

> Holly Farms, a N.C. corporation, carried on an integrated poultry operation and was the parent of a large number of separate corporate entities, all of which were engaged in the poultry industry or in a business directly

connected therewith. The purpose was to so operate that one corporation could manage and control the production of poultry from the breeder hens through the hatchery, feed mills, broiler farms, feed out operations, processing plants, and transportation to retail outlets. Holly Farms acquired, either by direct merger into it or by merger into a wholly-owned subsidiary and then into it, 32 corporations. Among them were:

Mocksville Feed*      Blue Ridge
Lovette Poultry*      Davie Poultry*
Lovette Feed

Blue Ridge and Lovette Feed were merged into Lovette Poultry, which was later merged into Mocksville Feed. Still later Davie Poultry was also merged into Mocksville Feed.

Prior to merger, Lovette Poultry had an economic net loss of over $600,000, of which approximately $100,-000 was attributable to Lovette Feed. The premerger businesses conducted by those corporations (primarily in two counties) were:

Mocksville Feed — manufacture of feed, principally poultry feed, 90% of which was sold through Lovette Poultry and Davie.

Lovette Poultry — a feed out operation by furnishing feed (Mocksville) to farmers to enable them to grow chickens to a weight suitable for the processing plant.

Davie Poultry — in addition to a business similar to that of Lovette Poultry, an experimental farm for the benefit of Mocksville Feed by which Mocksville could conduct experiments with new formulae and feeds.

Subsequent to the mergers the same type and kind of businesses were carried on, in the same manner and with the same management, officers and personnel and the mergers did not effect any change in administration, operation or ownership of either of the three corporations. On its income tax return for the year of the

---

*All of these were wholly owned subsidiaries of Holly Farms and had identical officers and directors.

mergers and the succeeding year Mocksville Feed claimed the net operating loss of Lovette as a deduction. Mocksville also carried forward and claimed the net operating loss of Davie.

The court of appeals reversed the trial court's holding that there was a continuity of business enterprise and that Mocksville was, for this reason, entitled to the deduction. It held:

1. The allowance of a deduction is a matter of legislative grace.

2. One claiming the deduction must bring himself within the provisions of the statute authorizing it.

3. Generally the deduction may be taken only by the taxpayer to whom it accrues.

4. The facts did not support the trial court's conclusion, viz:

a. Before merger Mocksville (B. C. Land Co.) had a net worth of $2,057,204.94 and was engaged in the manufacture of feeds. After the merger of Lovett Poultry (B. C. Gin Co.) it had a net worth of $3,017,-414.78, having added Lovette's net worth of $960,-209.84, and was engaged not only in the manufacture of feed (farming the land it owned) but was also engaged in the business of feeding out chickens (ginning cotton); thus, the income producing business was substantially enlarged and materially affected by the increase.

b. The subsequent merger of Davie Poultry (B. C. Gin Co.) into Mocksville Feed further increased the net worth of Mocksville (B. C. Land Co.) by $76,-936.66, the net worth of Davie, and added an experimental farm and another feed-out operation (cotton ginning) to the combined operation.

c. Each merger both substantially enlarged and materially affected the income producing business of the surviving corporation (B. C. Land Co.).

5. To find any continuity of business enterprises would

require that the three businesses be considered as though they had always been one or that the mergers be ignored.

6. Each merger so substantially enlarged and materially affected the income producing business that there was no continuity of business enterprise within the definition laid down in *Good Will*.

7. The fact that there was a vertical merger, i.e., the several merged corporations were doing different jobs in one continuous chain of processing (in Holly Farms and here) and the merger in *Good Will* was horizontal, i.e., each of the corporations involved was doing basically the same job, is a distinction without a difference.

8. The fact that the mergers were made in pursuance to an overall plan to bring into being an integrated operation, and not for tax avoidance purposes is not determinative of the question.

(Parenthetical matter has been inserted in order to clearly indicate the close analogy.)

This is the only "post-*Good Will*" decision we have found in North Carolina. We find no case reaching a different result in applying the North Carolina rule. Clearly, the application of the North Carolina rule we used in *Bracy* mandates the result we reached and to which we adhere.

HOLT, J., dissents.

CONLEY BYRD, Justice, dissenting. The suggestion that we married all of the interpretations given by North Carolina when we quoted from one of its cases in *Bracy Development Company* v. *Milam*, 252 Ark. 268, 478 S.W. 2d 765 (1972), greatly disturbs me. If the majority sticks to that position, then I will hereafter be noted as concurring in all opinions that quote cases from other jurisdictions because I cannot possibly research what every jurisdiction has generally held on a subject and certainly cannot speculate how a foreign jurisdiction might treat a different fact situation.

Furthermore, the case of *Holly Farms Poultry Industries Inc.* v. *Clayton*, 9 N.C. App. 345, 176 S.E. 2d 367 (1970), does not support the position of the majority here. In that case there was no attempt to show that the individual business which in-

curred the losses before the merger earned the income. The only proof in the North Carolina case was the stipulation that, after the merger, business was carried on as usual and that the corporation resulting from the merger had an income.

The undisputed proof in the case before us is that before the merger the gin had a loss. That after the paper merger business was carried on as usual with the books for each business being kept in the same manner as before the merger and that the individual business operated by the gin had sufficient earnings after the merger to offset the losses here sought to be taken.

Consequently, since our income tax law adopted the Federal Income Tax Statute, we should follow the Federal authorities cited in appellees' brief. See *Amherst Coal Company v. United States*, 295 F. Supp. 421 (S.D. W. Va. 1969).

For the reasons stated, I would grant the rehearing.