RINECO CHEMICAL INDUSTRIES, INC. *v.*
Richard WEISS, Director of the Department
of Finance and Administration
of the State of Arkansas

00-763                                                        40 S.W.3d 257

Supreme Court of Arkansas
Opinion delivered March 8, 2001

*Friday, Eldredge & Clark*, by: *William Thomas Baxter, Barry E. Coplin*, and *Allison J. Cornwell*, for appellant.

*Mark N. Waller*, for appellee.

R OBERT L. BROWN, Justice. Appellant Rineco Chemical Industries, Inc., appeals an order affirming the assessment of the Arkansas Compensating Use Tax ("use tax") by appellee Dick Barclay, Director of the Arkansas Department of Finance & Administration (DFA), in the amount of $258,322.46. Rineco raises two points on appeal: (1) the packaging materials it purchased out of state qualify for the sale-for-resale tax exemption under state law; and (2) the machinery and equipment purchased out of state are used in manufacturing articles of commerce and, therefore, qualify for an exemption under state law. Neither point is meritorious, and we affirm.

Rineco is engaged in the business of hazardous waste disposal in Saline County. In its business, companies that generate hazardous waste materials in their operations pay Rineco to take and dispose of the waste materials. According to a Rineco brochure that is part of the record in this case, Rineco handles wastes such as paints, resins, printing inks, refinery waste, sludges, rockhard solids, visquine, towels, gloves, rags, filter cartridges, and rubber boots. Rineco then analyzes and screens the waste material and shreds and blends the materials into various fuel products to meet certain specifications. Solid waste is packaged in plastic or metal pails, barrels, and sacks, which become part of the fuel product. Accelerants such as oil may be added to increase the product's BTU or British Thermal Unit content. Next, Rineco ships the packaged waste/fuel to cement kilns and power plants. Depending on the economic circumstances, Rineco either pays the cement kilns and power plants to dispose of the waste materials or these businesses pay Rineco for the waste materials which it uses as fuel. When the cost of fossil fuels such as coal, oil, or natural gas exceeds the cost of Rineco's packaged fuel, the cement kilns and power plants pay Rineco for the fuel. When the cost of the fossil fuels does not, then Rineco pays the cement kilns and power plants to dispose of the packaged hazardous waste. When the packaged fuel is burned in the cement kilns or power plants, the packaging materials such as the pails, barrels, or sacks are consumed as part of the fuel.

In 1994, DFA initiated an audit of Rineco's purchases of (1) pails and other packaging materials from out-of-state vendors used to package the hazardous waste for shipment to the cement kilns and power plants, and (2) the machinery and equipment purchased by Rineco from out-of-state vendors which are used in the packaging process. As a result of the audit, DFA issued a Notice of Proposed Assessment to Rineco on February 27, 1995, in which it notified Rineco that its purchases of the packaging materials and the machinery and equipment from January 1, 1989, through November 30, 1994, were subject to the Arkansas Compensating Use Tax. Because of this, Rineco was liable for payment of use taxes in the amount of $273,842.28.[1]

Rineco sought relief from the assessment through DFA's administrative process and claimed that its purchases of the packaging materials were exempt from the use tax under the sale-for-resale exemption [See Ark. Code Ann. § 26-52-401(12)(A) (Supp. 1999)], and its purchases of machinery and equipment were exempt from the use tax under the manufacturing exemption [See Ark. Code Ann. § 26-53-114(a)(1)(A) (Supp. 1999)]. The assessment was upheld, and Rineco timely paid the amount assessed under protest. Rineco next filed a refund claim in the Saline County Chancery Court. Following trial, the chancellor issued his order in which he denied the refund and held that the packaging materials and the machinery and equipment were not exempt from the use tax. The chancery court concluded in its order as follows:

> The court concludes that Plaintiff is not engaged in manufacturing articles of commerce for resale and that the use tax assessment against Plaintiff is sustained in its entirety. Plaintiff does not "manufacture" fuel from hazardous waste as the term "manufacture" is commonly understood. Plaintiff begins with hazardous waste in bulk form and processes the waste into a form which can be burned. This process is not equivalent to manufacturing. Alternatively, Plaintiff does not manufacture articles of commerce. The term "articles of commerce" is defined in DFA Gross Receipts Regulation GR-55(E)(6) as property placed on the market for retail sale. The packages of hazardous waste are not sold at retail to anyone. Rather, the cement producers, power plants and others are paid by Plaintiff to take the packaged waste.

---

[1] $15,519.82 was deducted from the original assessed amount. This amount represented a Saline County tax which both parties agreed was unconstitutional.

It is from this order that Rineco appeals.

## I. Standard of Review

In any tax-exemption case, the burden of proof is on the taxpayer to establish the exemption beyond a reasonable doubt. *See Pulaski County v. Jacuzzi Brothers Division*, 332 Ark. 91, 964 S.W.2d 788 (1998); *see also Arkansas Beverage Co. v. Heath*, 257 Ark. 991, 993, 521 S.W.2d 835, 836–837 (1975). In *Leathers v. Warmack*, 341 Ark. 609, 612, 19 S.W.3d 27, 30 (2000), we said:

> Our standard of review in tax-exemption cases is well established. Tax exemptions are strictly construed against the exemption. *Technical Servs. of Ark., Inc. v. Pledger*, 320 Ark. 333, 896 S.W.2d 433 (1995); *Pledger v. C.B. Form Co.*, 316 Ark. 22, 871 S.W.2d 333 (1994). A strong presumption operates in favor of the taxing power, and the taxpayer must establish an entitlement to a tax exemption beyond a reasonable doubt. *Id.* This standard is applicable to claims of exemption from income tax. *See Morgan v. Cook*, 211 Ark. 755, 202 S.W.2d 355 (1947). On appeal, we review tax-exemption cases *de novo* on the record, but we will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Technical Servs.*, 320 Ark. 333, 896 S.W.2d 433.

In strictly construing tax exemptions, this court has said that "to doubt is to deny the exemption." *Pledger v. C.B. Form*, 316 Ark. 22, 25, 871 S.W.2d 333, 334 (1994), quoting *Pledger v. Baldor Int'l*, 309 Ark. 30, 33, 827 S.W.2d 646, 648 (1992). In short, though the taxpayer's burden of proof to establish a tax exemption is not insurmountable, it is significant.

## II. Sale for Resale

Rineco's first point of appeal deals with the chancellor's denial of a use tax exemption for packaging materials such as pails, buckets, and sacks purchased out of state. The apposite statute reads:

> (12)(A) Gross receipts or gross proceeds derived from *sales for resale* to persons regularly engaged in the business of reselling the articles purchased, whether within or without the state if the sales within the state are made to persons to whom sales tax permits have been issued as provided in § 26-52-202[.]

Ark. Code Ann. § 26-52-401(12)(A) (Supp. 1999). (Emphasis added.)

Rineco's argument is that the purchased packaging materials are exempt under § 26-52-401(12)(A) because Rineco purchased the materials for resale as part of the finished product. This is evidenced, Rineco maintains, by the fact that when the packaged fuel is burned in the cement kilns and power plants, the packaging materials are consumed as part of the fuel.

Rineco posits that during the audit period, it was operating under a "reverse revenue flow" due to the current market conditions and low costs of energy. Under such conditions, Rineco acknowledges that it was actually paying the cement kilns and power plants to take and destroy the packaged waste. However, Rineco states that in the past it has bought waste materials from suppliers and has charged their customers for the resulting fuel product. Michael Spinks, Rineco's chief financial officer, testified at the hearing before the chancery court that the economics of obtaining raw materials and how they end up in a cement kiln are currently reversed from what would normally be found in its facility. Mr. Spinks added that the current economic circumstance is based on the fact that prices fluctuate as in any other economic activity and rise and fall with the price of fossil fuels. Wiley Cameron, Director of Technical Services at Rineco, confirmed this. He testified: "[i]t's a simple economic thing right now," and added that for a number of years, the same kilns that are actually forcing Rineco to pay them were actually paying Rineco for this product. Finally, Craig McMann, Rineco's Fuel Logistics and Engineering Manager, testified that "[a]s recently as five years ago, ... the kiln was paying the fuel supplier." McMann also pointed out that the supply and demand of coal and cement have changed, stating: "Energy costs are cheaper today than they've ever been." Rineco asserts that this testimony illustrates that even though the income stream is currently reversed, this could change in the future under different economic circumstances, such as with a significant increase in the price of coal, oil, and natural gas.

Rineco then goes forward and urges the court to examine the statutory definition of the term "sale." The Arkansas Tax Code provides:

> "Sale" is declared to mean the transfer of either the title or possession, except in the case of leases or rentals, for a valuable consideration of tangible personal property, regardless of the manner,

method, instrumentality, or device by which the transfer is accomplished.

Ark. Code Ann. § 26-52-103(a)(3)(A) (Supp. 1999). According to Rineco, the only point at issue here is whether Rineco received "valuable consideration" under this definition as a result of the transfer of the packaged waste/fuel to the cement kilns and power plants. Rineco maintains that it did because the transfer of the product to the kilns and power plants benefitted Rineco because it allowed the company to stay in business and maintain a relationship with potential customers for the fuel product.

In making its argument, Rineco seeks an expansive interpretation of the term "sale" and specifically the term "valuable consideration" under § 26-52-103(a)(3)(A). This same argument, however, was made to this court and rejected in *Hervey v. Southern Wooden Box*, 253 Ark. 290, 486 S.W.2d 65 (1972), when the predecessor statute to § 26-52-103(a)(3)(A), which was Ark. Stats. Ann. § 84-1902(c) (Repl. 1980), was interpreted. In *Southern Wooden Box*, the issue was whether Coca Cola Bottling Company should pay a sales or use tax on wooden cases it used in marketing its soft drinks. Coca Cola claimed that it bought the cases for resale and that the cases should be exempt from sales or use taxes. The proof showed that Coca Cola paid $1.07 per case which was used to transport twenty-four bottles of Coke. The Coca Cola routeman collected $0.12 per wooden case delivered to a retailer as a deposit and credited each retailer with $0.12 upon the return of each case. We held that this was not a sale for resale of the wooden cases, which would entitle Coca Cola to the exemption:

> We hold that CocaCola must prove that it buys the wooden cases for the purpose of reselling them. We do not interpret the broad statutory definition of a sale to include every transaction in which there is a transfer of possession, for a consideration, Ark. Stat. Ann. § 84-1902(c). The statute must be read as a whole. If the reference to a transfer of possession were applied literally in every instance, absurd results would follow. For instance, a company engaged in renting automobiles would not be required to pay a sales tax upon its purchase of cars, because it would be buying them for resale. Similarly, a company selling butane gas in heavy iron bottles would be reselling the bottles, even though its customers were required to return them. It is our duty to give the statute a reasonable construction, not an absurd one.

*Southern Wooden Box*, 253 Ark. at 295, 486 S.W.2d 68-9. This court, accordingly, declined to give an expansive reading to the statutory definition of "sale" and "valuable consideration." Rineco urges that the *Southern Wooden Box* case is not controlling because it involved a deposit situation as opposed to a transfer of title to or possession of property. That may be, but the case is clearly precedent for this court's determination of the scope of the term "sale," as defined by statute.

■■ We conclude that the argument Rineco advances is not persuasive. When a party seeks a sale-for-resale exemption on goods purchased, it is appropriate to consider the economic realities of the sale. *See Hervey v. Southern Wooden Box, supra.* An examination of the realities here shows that during the audit period, Rineco was paid by the hazardous waste producers to receive shipments of hazardous waste. After preparing and packaging the waste for burning, Rineco then paid the cement kilns and power plants to take the packaged waste and burn it. Those entities never paid Rineco for packaged fuel during the audit period. With Rineco paying for the disposal of the packaged waste material, we are loath to conclude that the transaction constitutes a sale. Were we to countenance the payment of money to the cement kilns and power plants as a sale, this too would lead to absurd results and run counter to our interpretation of the same statute in *Hervey v. Southern Wooden Box, supra.* Under what circumstances would a transfer of title or possession of Rineco's personal property not be a resale, if we followed Rineco's theory? We affirm the trial court on this point.

### III. Article of Commerce

■■ Rineco next argues that its purchases of machinery and equipment qualify for the manufacturing exemption under Ark. Code Ann. § 26-53-114(a)(1)(A) (Supp. 1999), which states:

(a) There is specifically exempted from the taxes levied in this subchapter:

(1)(A) *Machinery and equipment* used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas ... but only to the extent that the machinery and equipment is purchased and used for the purposes set forth in this subdivision.

(Emphasis added.) Rineco has broken down the statutory definition into five factors that must be established to qualify for the manufacturing exemption. The item must be: (1) machinery or equipment; (2) used in manufacturing; (3) used directly in some stage of the manufacturing process; (4) an article of commerce; and (5) used at manufacturing or processing plants or facilities in Arkansas. We agree that these are the essential elements for the exemption. Because we conclude that all five elements must be met and, further, that the packaged waste is not an article of commerce, we affirm the chancellor on this point as well.

Rineco initially points out that § 26-53-114(a)(1)(A) does not specifically define what constitutes an "article of commerce." It acknowledges, however, that Gross Receipts Tax Regulation GR-55(F)(6) of the Arkansas Department of Finance and Administration Rules and Regulations does define the term. Regulation GR-55(F)(6) reads:

> An article of commerce includes any *property to be placed on the market for retail sale to the general public* .... Custom items which are produced for specific customers in response to special orders and which are not readily marketable to the general public are not articles of commerce. (Emphasis added.)

By its terms, DFA Regulation GR-55(F)(6) contemplates a sale. *See also Pledger v. Noritsu America Corp.*, 320 Ark. 371, 896 S.W.2d 595 (1995).

Again, the pivotal point in our analysis is whether the packaged waste is *sold* to the cement kilns and power plants. As already discussed, we conclude that a sale did not take place during the audit period. Thus, the purchased machinery and equipment was not involved in the production or manufacture of an article of commerce and does not qualify for the exemption under § 26-53-114(a)(1)(A). Because we decide this point on the failure of Rineco to produce an article of commerce, it is unnecessary for us to reach the issues of whether Rineco's process equates to manufacturing or whether the packaged waste is marketable to the general public.

Affirmed.

CORBIN and THORNTON, JJ., dissent.

RAY THORNTON, Justice, dissenting. There are two issues in this case: (1) whether packaging materials purchased

out of state qualify for sale-for-resale tax exemptions, and (2) whether machinery and equipment used in manufacturing an article of commerce qualify for a tax exemption. The majority denies the exemption for packaging materials because of its conclusion that no resale occurs in current market conditions, leaving open the possibility of a tax exemption if the market for the product improves.

The majority then decides that the machinery and equipment purchased out of state and used in manufacturing articles of commerce do not qualify for an exemption under Ark. Code Ann. § 26-53-114(a)(1)(A) (Supp. 1999). This interpretation violates the principles of statutory interpretation and the decisions of the United States Supreme Court, and therefore, I respectfully dissent.

Ark. Code Ann. § 26-53-114(a)(1)(A) provides:

> (a) There is specifically exempted from the taxes levied in this subchapter:

> (1)(A) Machinery and equipment used directly in producing, manufacturing, fabricating, assembling, processing, finishing, or packaging of articles of commerce at manufacturing or processing plants or facilities in the State of Arkansas . . . but only to the extent that the machinery and equipment is purchased and used for the purposes set forth in the subdivision.

*Id.* The basic rule of statutory interpretation is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76 (1997). Here, there is no mention of a requirement for a sale, whether profitable or not, to qualify for the exemption.

The majority points out that the five essential elements for the statutory exemption are that the item must be: (1) machinery or equipment; (2) used in manufacturing; (3) used directly in some stage of the manufacturing process; (4) used to make an article of commerce; and (5) used at manufacturing or processing plants or facilities in Arkansas. I agree with the majority that there is no doubt that the Rineco machinery and equipment meet the criteria prescribed by (1), (2), (3), and (5). However, I disagree with the majority's holding that the product manufactured by Rineco is not an article of commerce.

Perhaps because there is no mention of a sale in Ark. Code Ann. § 26-53-114(a)(1)(A), the majority turns to Regulation GR-55(F)(6) of the Department of Finance and Administration's ("DFA") Rules and Regulations for guidance, and cites that rule to suggest that property must be sold to become an article of commerce. That interpretation is flawed.

DFA Regulation GR-55(F)(6) reads:

> An article of commerce *includes any property to be placed on the market* for retail sale to the general public . . . [.] Custom items which are produced for specific customers in response to special orders and which are not readily marketable to the general public are not articles of commerce.

*Id.* (emphasis added). The DFA regulation upon which the majority relies merely states that an article of commerce "includes any property to be placed on the market for retail sale to the general public." *Id.* The regulation simply does not require that an article of commerce must be sold before it becomes an article of commerce.

To the contrary, articles of commerce may include property that is not sold. In *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, 504 U.S. 353 (1992), the United States Supreme Court cited with approval its holding from *Philadelphia v. New Jersey*, 437 U.S. 617 (1978), that "[s]olid waste, even if it has no value, is an article of commerce." This holding that solid waste is an article of commerce, regardless of value, has also been reaffirmed in *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334 (1992). While articles of commerce may include property placed on the market for sale, the DFA Regulation GR-55(F)(6) simply does not require that a sale *must* occur before an article of commerce can come into existence.

Because I believe that machinery and equipment utilized by Rineco at its manufacturing plant is clearly entitled to the tax exemption provided by Ark. Code Ann. § 26-53-114(a)(1)(A), I respectfully dissent.

I am authorized to state that Justice CORBIN joins in this dissent.

CORBIN, J., joins.