COOPER REALTY INVESTMENTS, INC. *v.*
ARKANSAS CONTRACTORS LICENSING BOARD

03-434                                                              134 S.W.3d 1

Supreme Court of Arkansas
Opinion delivered December 4, 2003

[Petition for rehearing denied January 15, 2004.*]

---

* DICKEY, C.J., not participating.

*Wright, Lindsey & Jennings LLP*, by: *Troy A. Price*, for appellant.

*Grègory L. Crow*, for appellee.

ROBERT L. BROWN, Justice. Appellant Cooper Realty Investments, Inc. (Cooper), appeals from an Order and Judgment ordering it to pay $16,056.00 plus interest for civil penalties assessed against its contractor and subcontractors. The penalties stemmed from a failure of the contractors to obtain a contractor's license and to be bonded. Cooper contends that the appellee, Arkansas Contractors Licensing Board, erred in assessing these civil penalties against it and raises four points for reversal: (1) the circuit court construed the applicable statute (Ark. Code Ann. § 17-25-403 (Repl.

2001)) too broadly in assessing civil penalties; (2) Cooper is entitled to judgment as a matter of law, because it owes no money to the general contractor; (3) the Board cannot levy civil penalties against Cooper for violations of the subcontractors, because there was no notice to Cooper as required by statute; and (4) § 17-25-403 is void for vagueness and violates Cooper's due process rights. We agree with Cooper that § 17-25-403 does not contemplate the payment of civil penalties. Accordingly, we reverse and dismiss.

On October 6, 2000, Cooper contracted with Edward Krivanek of Bella Vista to haul fill material onto the Lake Bed Project property, which is located in Benton County, to raise the level of the land by nine feet. This contract was estimated to be worth $500,000. Mr. Krivanek subcontracted a portion of the work to Montgomery Gibbs and a portion to Larry Morris Construction, Inc. Both subcontractors were to haul fill material and compact it. Cooper paid Mr. Krivanek $60,075 on December 6, 2000, for work done and then paid him $65,812.50 on February 15, 2001. Cooper received two additional invoices from Mr. Krivanek: one was in the amount of $80,625 and dated April 10, 2001, and the second was for $49,571 and dated May 21, 2001. Neither invoice was paid.

Cooper subsequently learned from an investigator for the Board that Mr. Krivanek was not licensed and thus in violation of state contracting statutes. On April 24, 2001, Cooper sent a letter to Mr. Krivanek in which it terminated their contract due to his non-licensure. Pursuant to Ark. Code Ann. § 17-25-103(d) (Repl. 2001), Cooper did not make any further payments to Mr. Krivanek. That same day, the Board sent a letter to Cooper, stating that because Mr. Krivanek failed to comply with § 17-25-403, Cooper had financial responsibility up to $50,000 for Mr. Krivanek's failure to fulfill his financial obligations to the State on the project. Mr. Krivanek received similar letters from the Board on May 14, 2001, which stated that he would be held financially liable up to $9,200 for Mr. Gibbs and up to $8,892.87 for Morris Construction due to their failure to obtain licenses or bonds. Cooper received a later letter dated May 21, 2001, which stated that its financial responsibility was reduced to $22,050.

On May 22, 2001, the Board issued notices to Mr. Krivanek, Mr. Gibbs, and Morris Construction that they were charged with violating the Contractors Code, because they were performing contracting work without a license and without securing a $10,000 bond, as required. The notices informed the contractors that there

would be a hearing before the Board on June 8, 2001. On June 6, 2001, Cooper paid Morris Construction $75,589.40 for its work on the job, without knowing that Morris Construction was not licensed. Cooper made the payment under threat that Morris Construction would place a materialmen's lien on the property, if Cooper failed to pay. None of the three contractors appeared before the Board at the called hearing, and the Board levied non-licensure fines against Mr. Krivanek for $4,400, against Mr. Gibbs for $1,840, and against Morris Construction for $1,778, and further levied fines against the three contractors for failure to post bond in like amounts.

On July 19, 2001, the Board demanded that Cooper pay the fines. Cooper declined to do so. On March 14, 2002, the Board filed a complaint against Cooper and prayed that the circuit court require Cooper to pay the Board $16,056 plus interest.

On August 5, 2002, Cooper moved the court to grant it summary judgment and dismiss the complaint. The next day, the Board filed its motion for summary judgment with the court.

On December 10, 2002, the circuit court held a hearing on the motions. At the hearing's conclusion, the circuit court ruled that § 17-25-403 was constitutional, and, under the plain language of § 17-25-403, Cooper was responsible for all financial obligations of its contractors due the State on its project, including the civil penalties. The court subsequently entered its Order and Judgment.

Cooper argues, as its first point on appeal, that the circuit court erred in not dismissing the Board's complaint against Cooper as a matter of law under § 17-25-403, because the contractors' licensing scheme, when strictly construed, does not subject the customers of contractors to liability for civil fines or penalties arising from violations of the law committed by the contractors. Cooper adds that § 17-25-403 deals with the liability of a customer for a contractor's obligations incurred while working on the customer's specific project and not for generally failing to obtain licenses or to post bonds in violation of the Contractor's Code.

Cooper also points out that the phrase "all financial obligations" is not defined in § 17-25-403 but that other statutes, such as § 17-25-404 (Repl. 2001), support a narrow interpretation. According to Cooper, when narrowly viewed in light of § 17-25-404, the phrase "all financial obligations" refers only to payment of

state and local taxes, workers' compensation premiums, and un-employment security contributions generated through the period that the contractor worked on the project. Cooper adds that the purpose of the bonding law is to protect the public treasury by securing payment of state and local taxes, workers' compensation premiums, and unemployment contributions that are generated through a contractor's work in general.

The Board's answer to this is that § 17-25-403 is clear on its face and means that if a contractor fails to comply with the licensure and bond provisions and further fails to honor its financial obligations to any state agency, the customer for whom the contractor works is responsible for that obligation, including civil penalties.

The Board also responds that "all financial obligations" has an ordinary, plain, and clear meaning that does not require interpretation. For support, the Board cites this court to *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998) (the basic rule of statutory construction is to give effect to the intent of the legislature); *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999) (construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language); and *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993) ("The rule of strict construction is not the enemy of common sense"). In short, the Board maintains that § 17-25-403 unmistakenly provides that civil penalties are "financial obligations" covered by the Contractor's Code.

The question of the correct interpretation and application of an Arkansas statute is a question of law, which this court decides *de novo. See Wal-Mart Stores, Inc. v. P.O. Market, Inc.*, 347 Ark. 651, 66 S.W.3d 620 (2002). We turn then to § 17-25-403, the statute in question. The statute reads:

> In the event the contractor fails to honor its financial obliga-tions to the State of Arkansas or to any … other political subdivision of the state, the customer for whom the work was being performed shall be responsible for all financial obligations of the contractor to the State of Arkansas or to any … other political subdivision of the state, on that customer's project, provided that the customer receives written notice of the contractor's failure to comply with this subchapter prior to final payment to the contractor. The written notice must include the maximum amount of any and all financial

obligations the contractor may potentially owe to the State of Arkansas or to any ... other political subdivision of the state, arising from the customer's project.

Ark. Code Ann. § 17-25-403 (Repl. 2001).

Section 17-25-404 concerns the surety bond requirement, and it reads:

(a) Before commencing work or undertaking to perform any services or duties in the state, a contractor shall file with the ...Board as the depository agency, a surety bond of a surety authorized to do business in this state or a cash bond. The bond shall be a condition of licensure and a contractor's license shall not be released until the bond has been properly filed.

(b) The bond shall be:

(1) In a penal sum of ten thousands dollars ($10,000.00);

(2) Payable to the State of Arkansas; and

(3) Conditioned on the contractor complying with the tax laws of the State of Arkansas, and when applicable, any city, county, school district, state agency, or other political subdivision of the state, the Arkansas Employment Security Law, § 11-10-101 et seq., the Workers' Compensation Law, § 11-9-101 et seq., and the provisions of this subchapter.

Ark. Code Ann. § 17-25-404 (Repl. 2001).

■   Our interpretation of § 17-25-403, including whether the phrase "all financial obligations" includes civil penalties, is a case of first impression. Cooper is correct, however, in emphasizing that this court has held that we construe penal statutes strictly. For example, in *Thompson, Commissioner of Revenues v. Chadwick,* 221 Ark. 720, 255 S.W.2d 687 (1953), we said: "Statutes imposing burdens and liabilities unknown at common law are strictly construed in favor of those upon whom the burden is sought to be imposed." *Id.* at 723, 255 S.W.2d at 689. In *Wilcox v. Safley,* 298 Ark. 159, 766 S.W.2d 12 (1989), *rehearing denied,* 298 Ark. 159,

771 S.W.2d 741 (1989), which dealt with an interpretation of the Contractor's Code and specifically with the definition of "contractor," we said:

> Code provisions imposing penalties for noncompliance with licensing requirements, . . . must be strictly construed. Accordingly, if the language of such provisions is not clear and positive, or it if is reasonably open to different interpretations, every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied. Where a provision is clear and unambiguous, the intention of the legislature must be determined from the plain meaning of the language of the provision.

*Id.* at 161, 766 S.W.2d at 13 (internal citations omitted). In short, under our longstanding jurisprudence, when dealing with a penal statute, this court has strictly construed the statute in favor of the party sought to be penalized.

The Board urges that non-licensure fines and fines based on failure to post bond, both of which were levied against Mr. Krivanek, Mr. Gibbs, and Morris Construction, were clearly contemplated by the Arkansas General Assembly when it used the phrase "all financial obligations" in § 17-25-403. In addition, the Board emphasizes that "penalties" is a term expressly mentioned both in §§ 17-25-103(e)(1) and -402(b). Under § 17-25-103(e)(1), any contractor who violates the Contractor's Code shall be assessed a civil penalty, which shall be paid to the Board. Section § 17-25-402(b) provides that all enforcement penalties assessed for violations of the Code shall be paid directly to the Board to defer the cost of enforcement. And § 17-25-408 authorizes the Board to assess penalties for failure to comply with the Code. In sum, the Board contends the statutory scheme in the Code contemplates civil penalties for violations, and, hence, these "penalties" owed to the state and payable to the Board must be read into the financial-obligation language of § 17-25-403.

We disagree with the Board. Section 17-25-403 does not specifically refer to civil penalties while other sections of the Code do. Moreover, violations for non-licensure and for not being bonded are general violations and are not financial obligations related to a specific project. We construe § 17-25-403 as dealing with obligations owed to the state in connection with specific projects such as tax obligations, workers' compensation premiums,

and unemployment compensation contributions. Using the appropriate canon of construction, which is strict scrutiny in favor of Cooper, we conclude that the phrase "all financial obligations" does not include civil penalties. Thus, § 17-25-403 cannot be the statutory basis for assessing Cooper with the penalties levied against Mr. Krivanek, Montgomery Gibbs, and Larry Morris Construction, Inc. We reverse the circuit court on this point.

Because we reverse on the basis that § 17-25-403 does not include civil penalties as financial obligations owed to the State, there is no need to address the other claims made by Cooper.

Reversed and dismissed.