DAIMLER CHRYSLER SERVICES NORTH AMERICA, LLC *v.*
Richard WEISS, Director of Department of Finance and
Administration and Timothy Leathers,
Commissioner of Revenue

04-284 200 S.W.3d 405

Supreme Court of Arkansas
Opinion delivered December 16, 2004

[Rehearing denied January 20, 2005.]

*Akerman Senterfitt*, by: *Peter O. Larsen* and *David E. Otero*; and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *John K. Baker*, for appellant.

*Ronna L. Abshure* and *Martha G. Hunt*, Revenue Legal Counsel, for appellee.

JIM HANNAH, Justice. Appellant DaimlerChrysler Services North America, LLC ("Chrysler") appeals the order of dismissal of the Pulaski County Circuit Court, Seventeenth Division, wherein the circuit court found that it lacked jurisdiction to award a "bad debt" refund to Chrysler because Chrysler is not a "taxpayer" for the purposes of Ark. Code Ann. § 26-52-309 (Repl. 1997), which is commonly known as the "Bad Debt Statute." We find no error and,

accordingly, we affirm. This is an appeal required by law to be heard by this court; our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(8). *See also* Ark. Code Ann. § 26-18-406 (Repl. 1997).

### Facts

Chrysler sold and leased motor vehicles and financed the sale of motor vehicles from motor-vehicle dealerships (collectively referred to as "sellers") to consumer purchasers. In a typical transaction, the consumer purchaser entered into an installment contract for the purchase of a motor vehicle from the seller. The amount financed included the purchase price of the motor vehicle, as well as the gross receipts tax due on the vehicle, which the seller paid to the State. The seller then assigned the installment contract to Chrysler, and Chrysler collected the payments. In return, Chrysler paid the seller the full financed amount. At some point during the period of repayment, the purchaser defaulted on the installment contract. After resorting to available remedies against the purchaser, Chrysler wrote off the uncollectible portion of the debt for federal income tax purposes.

On February 16, 2000, Chrysler filed a claim with appellee Department of Finance and Administration (DF&A) for a refund or deduction of the pro rata portion of gross receipts tax related to bad debts arising out of the sale and financing of motor vehicles in Arkansas. The claim was filed pursuant to the Bad Debt Statute, which allows taxpayers that finance sales transactions a deduction or refund for gross receipt tax that was previously reported and remitted, but is now uncollectible. DF&A determined that Chrysler was not a taxpayer under the Bad Debt Statute and denied Chrysler's claim for a refund.

Pursuant to Ark. Code Ann. § 26-18-406, Chrysler appealed DF&A's decision to the circuit court, and in an order entered on November 13, 2003, the circuit court dismissed the case, holding that Chrysler was not a "taxpayer" for the purposes of the Bad Debt Statute and, as such, Chrysler was not entitled to a deduction. Chrysler's sole point on appeal is that the circuit court erred in finding that it lacked jurisdiction to award a deduction on the ground that Chrysler is not a "taxpayer" for the purposes of the Bad Debt Statute.

### Standard of Review

As a general rule, in reviewing the grant of a motion for summary judgment, the appellate court determines if summary

judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *Mack v. Brazil, Adlong, & Winningham, PLC,* 357 Ark. 1, 159 S.W.3d 291 (2004). The appellate court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

However, the granting of this summary judgment motion was based upon the circuit court's interpretation of the Bad Debt Statute. The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides *de novo. Cooper Realty Invs., Inc. v. Arkansas Contractors Licensing Bd.,* 355 Ark. 156, 134 S.W.3d 1 (2003).

A tax deduction is allowed only as a matter of legislative grace and one claiming the deduction bears the burden of proving that he is entitled to it and of bringing himself clearly within the terms and conditions as may be imposed by the statute. *St. Louis Southwestern Ry. Co. v. Ragland,* 304 Ark. 1, 4, 800 S.W.2d 410, 412 (1990); *Skelton v. B.C. Land Co.,* 256 Ark. 961, 513 S.W.2d 919 (1974). Similarly, we have held in numerous tax-exemption cases that any tax exemption must be strictly construed against the exemption and any doubt suggests the exemption should be denied. *See, e.g., Rineco Chem. Indus., Inc. v. Weiss,* 344 Ark. 118, 40 S.W.3d 257 (2001); *Technical Servs. of Ark., Inc. v. Pledger,* 320 Ark. 333, 896 S.W.2d 433 (1995); *Pledger v. C.B. Form Co.,* 316 Ark. 22, 871 S.W.2d 333 (1994); *Southwestern Ry., supra.*

In this case, the circuit court's decision denying Chrysler's claim to a deduction is based upon the circuit court's construction of "taxpayer" under the Bad Debt Statute. This court outlined our rules of statutory construction in *Faulkner v. Arkansas Children's Hospital,* 347 Ark. 941, 952, 69 S.W.3d 393, 400 (2002), where we stated:

> The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Raley v. Wagner,* 346 Ark. 234, 57 S.W.3d 683 (2001); *Dunklin v. Ramsay,* 328 Ark. 263, 944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Stephens v. Arkansas Sch. for the Blind,* 341 Ark. 939,

20 S.W.3d 397 (2000); *Burcham v. City of Van Buren,* 330 Ark. 451, 954 S.W.2d 266 (1997). Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens v. Arkansas Sch. for the Blind, supra* (citing *State v. McLeod,* 318 Ark. 781, 888 S.W.2d 639 (1994)). Finally, the ultimate rule of statutory construction is to give effect to the intent of the General Assembly. *Ford v. Keith,* 338 Ark. 487, 996 S.W.2d 20 (1999); *Kildow v. Baldwin Piano & Organ,* 333 Ark. 335, 969 S.W.2d 190 (1998).

With this standard of review in mind, we turn to Chrysler's argument on appeal.

*Meaning of "Taxpayer" for the Purposes of the Bad Debt Statute*

Chrysler contends that the circuit court's construction of "taxpayer" under the Bad Debt Statute is erroneous because it conflicts with the plain language and legislative intent of the statute.

Section 26-52-309 provides:

(a) In computing the amount of tax due under the Arkansas Gross Receipts Act, § 26-52-101 et seq., and any act supplemental thereto, taxpayers may deduct bad debts from the total amount upon which the tax is calculated for any report. Any deduction taken or refund paid which is attributed to bad debts shall not include interest.

(b)(1) For purposes of this section, "bad debt" means any portion of a debt for an amount which a taxpayer has reported as taxable which the taxpayer legally claims as a bad debt deduction for federal income tax purposes.

(2) Bad debts include, but are not limited to, worthless checks, worthless credit card payments, and uncollectible credit accounts.

(3) Bad debts do not include financing charges or interest, uncollectible amounts on property that remain in the possession of the taxpayer or vendor until the full purchase price is paid, expenses incurred in attempting to collect any debt, debts sold or assigned to third parties for collection, and repossessed property.

(c) Bad debts incurred for sales made prior to November 9, 1983, shall not be deducted.

(d) Bad debts must be deducted within three (3) years of the date of the sale for which the debt was incurred.

(e) If a deduction is taken for a bad debt and the taxpayer subsequently collects the debt in whole or in part, the tax on the amount so collected shall be paid and reported on the next return due after the collection.

■■ In this case, the parties agree that Chrysler was the source of payment of the gross receipts tax due on the motor vehicles. However, the party who actually paid the gross receipts tax is not automatically a "taxpayer" for the purposes of the Bad Debt Statute. To be a "taxpayer" for the purposes of the Bad Debt Statute, Chrysler must be a "person liable to remit a tax hereunder or to make a report for the purpose of claiming any exemption from payment of taxes levied by [the Gross Receipts Act.]" Ark. Code Ann. § 26-52-103(a)(5) (Repl. 1997). We first note that Chrysler is a "person" under the Bad Debt Statute, as limited liability companies are included within the definition of "person." *See* Ark. Code Ann. § 26-52-103(a)(1) (Repl. 1997). While it is clear that Chrysler was the source of payment of the gross receipts tax to the State, the parties disagree on the issue of whether Chrysler was *liable* to remit the tax. "Liable" is not defined for the purposes of the Bad Debt Statute. *Black's Law Dictionary* defines "liability," in part as:

1. The quality or state of being legally obligated or accountable;
. . .

2. A financial or pecuniary obligation; DEBT < tax liability >
. . .

932 (8th ed. 2004).

■ DF&A contends that for the purposes of the motor vehicle gross receipts tax, the taxpayer, or person liable to remit the tax, is the consumer. Section 26-52-510(a)(1)(A) (Repl. 1997) provides:

*The tax levied* by this chapter and all other gross receipts taxes levied by the state *in respect to the sale of new or used motor vehicles*, trailers, or

semitrailers *required to be licensed in this state shall be paid by the consumer* to the Director of the Department of Finance and Administration instead of being collected by the dealer or seller, and it is the mandatory duty of the director to require the payment of such tax at the time of registration before issuing licenses for new or used motor vehicles or trailers.

(Emphasis added.) DF&A's argument is well-taken. Clearly, Chrysler is not liable to remit the tax.

▇ Chrysler next argues that it is a taxpayer because it possesses an Arkansas Sales and Use Tax Permit and pays substantial tax in Arkansas. DF&A points out that Chrysler's sales and use tax permit provides that Chrysler is engaged in the business of "automobile leasing." The permit does not describe Chrysler as being engaged in the business of the sale of motor vehicles. DF&A argues that since Chrysler is not *required* to remit taxes and make reports of those taxes for motor vehicle gross receipts tax and make reports of that tax, then Chrysler cannot claim that it is a "taxpayer" in the sale of motor vehicles. We agree with DF&A's contention that it is possible to be a taxpayer for one kind of tax, while not a taxpayer for another kind of tax.

Chrysler goes on to argue that even if it is not a "taxpayer" as defined under § 26-52-103(a)(5), it is a taxpayer under DF&A's Regulation 1994-3.

That regulation provides in part:

Pursuant to authority given the Commission of Revenues by subsection (b) of Section 1 of Act 293 of 1991 (Ark. Code Ann. §§ 27-14-906(b)), after the effective date of this regulation, *lienholders* and motor vehicle dealers *may apply for registration and certificates of title on behalf of the purchasers* of new or used vehicles. . . . The dealer or *lienholder* shall file the application with the Commissioner, shall attach thereto a copy of the instrument creating and evidencing the lien or encumbrance and *shall pay all taxes* and fees due *for such registration and issuance of a title.*

▇ We agree with DF&A's contention that the only party who is *liable* to pay the motor vehicle gross receipts tax is the consumer. Regulation 1994-3 *allows* lienholders to pay gross receipts tax *on behalf of* consumers; however, this allowance does not transfer ultimate liability of payment of the gross receipts tax from the consumer to the lienholder.

Chrysler further argues that it is a "taxpayer" because it meets the requirements of a "taxpayer" as defined by the Arkansas Tax Procedure Act, which is codified at Ark. Code Ann. § 26-18-101 (Repl. 1997). A "taxpayer" under this Act is defined as follows:

(A) Any person subject to or liable for any state tax;

(B) Any person required to file a return, or to pay, or withhold and remit any tax required by the provisions of any state tax law; or

(C) Any person required to obtain a license or a permit or to keep any records under the provisions of any state tax law; . . .

Ark. Code Ann. § 26-18-104(14) (Repl. 1997).

We need not address the merits of Chrysler's argument that it is a "taxpayer" under the Arkansas Tax Procedure Act. The Bad Debt Statute is a part of the Arkansas Gross Receipts Act, and "taxpayer" is specifically defined under that Act, for the purposes of that Act. We have long held that a general statute must yield when there is a specific statute involving particular subject matter. *See, e.g., Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000); *Shelton v. Fiser*, 340 Ark. 89, 8 S.W.3d 557 (2000).

Next, Chrysler argues that as an assignee of the sellers, Chrysler is a "taxpayer" entitled to relief under the Bad Debt Statute. Chrysler states:

. . . in the event that this Court determines that the Sellers are "taxpayers" under the Bad Debt Statute, Chrysler also is a "taxpayer" by assignment under Arkansas' common law of assignment, and is therefore entitled to a refund or deduction because the Sellers assigned all of their rights under the Bad Debt Statute to Chrysler. The circuit court agreed this is a solid argument and this is not an issue on appeal.

While the circuit court does state that "Chrysler sets forth a solid argument," the circuit court concludes that "the Sellers are not taxpayers as defined by the Arkansas Code." Since Chrysler states that this is "not an issue on appeal," we do not address it.

Affirmed.

BROWN, J., concurring.

THORNTON, J., not participating.

ROBERT L. BROWN, Justice, concurring. I concur with the result reached by the majority opinion, but do so with serious misgivings. The result of today's decision is to render the Bad Debt Statute, Ark. Code Ann. § 26-52-309 (Repl. 1997), useless for transactions involving motor vehicle financing. This means those lenders who finance car sales are unable to collect a refund of sales taxes paid on uncollectible debts. Thus, a major sector of our business community is treated differently from all other sales transactions in our state. As a result, lenders on car sales pay a tax they do not owe, and the State realizes a considerable windfall. I would hope that the General Assembly will look closely at this situation at its next regular session, commencing in January.

The majority rationalizes its decision on the basis that sales tax refunds for uncollectible bad debt are only available to "taxpayers." Lenders of the money to pay the sales tax are not defined as taxpayers under Ark. Code Ann. § 26-52-103(a)(5) (Repl. 1997), says the majority, because lenders are not *liable* to pay the sales tax. The majority refers to Ark. Code Ann. § 26-52-510(a)(1)(A) (Repl. 1997), where it is the consumer who is directed to pay the sales tax on motor vehicle purchases.

The problem with the majority's analysis is that it renders the Bad Debt Statute meaningless for sales of motor vehicles when financing is involved. In today's world, it is a rare new-car sale where the price is paid in cash. Without question, financing a car purchase is the preferred method for the vast majority of consumers. Yet, the majority's analysis forecloses the lender, who actually provides the money to pay the sales tax, from collecting a refund for the portion of the tax paid on the bad debt. Who then would be available to collect the refund under the Bad Debt Statute? Not the seller/dealer, because no debt is owing to it. The dealer has been paid the purchase price in full. Not the consumer/purchaser. He or she did not pay the sales tax but owes that amount to the lender. As a result, under the majority's interpretation, no entity or person can claim a bad debt refund when a motor vehicle loan is involved.

Though the majority does not expressly state this, it has concluded, in effect, that motor vehicle transactions are excluded from refunds under the Bad Debt Statute, even though the General

Assembly never makes that declaration in the statute. The majority is simply reading in an exception that is not there. Lenders like Daimler Chrysler no doubt are puzzled as to why the statute does not apply to them. They have paid a tax they do not owe; yet, the State keeps the money and realizes a windfall and refuses to extend them the refund privilege. That is not right.

Having said that, the Bad Debt Statute is not a model of clarity. And though the statute does not expressly exempt motor vehicle sales, some meager doubt is raised because other statutes do treat payment of the sales tax on motor vehicle sales differently from sales of ordinary tangible property. *Compare* Ark. Code Ann. § 26-52-510 (Repl. 1997) (consumers pay the sales tax directly to the State for car purchases) *to* Ark. Code Ann. § 26-52-508 (Repl. 1997) (sellers collect sales tax on sales of tangible personal property and remit to State). Our standard of review for an exemption or deduction from paying a tax is that we strictly construe the statute against an exemption and if there is any doubt, the exemption or deduction should be denied. *See, e.g., St. Louis Southwestern Ry. Co. v. Ragland*, 304 Ark. 1, 800 S.W.2d 410 (1990). Though I think the majority's analysis on the liability to pay the tax is questionable, I must confess to some doubt as to what the General Assembly intended for refunds for bad debts associated with motor vehicle sales.

There is one final point about the majority opinion. It does not discuss Daimler Chrysler's assignment argument which the trial court addressed and which Daimler Chrysler argues on appeal. The seminal case on this point, *Puget Sound Nat'l Bank v. State Dep't of Revenue*, 123 Wash. 2d 284, 868 P.2d 127 (1994), holds that the Washington State bad debt statute did not prohibit the refund of assigned sales tax refunds to lenders; nor did public policy prohibit the assignment of a tax refund, since any other rule would be inequitable and entitle the state to a financial windfall. That issue needs to be resolved.

For these stated reasons, I concur only in the result.