2012 Ark. 119

**BENNETT & DeLONEY, P.C.; Michael Bennett; and Richard DeLoney, Appellants**

v.

**STATE of Arkansas, ex rel. Dustin McDANIEL, Attorney General, Appellee.**

**No. 11–931.**

Supreme Court of Arkansas.

March 15, 2012.

Rehearing Denied April 26, 2012.

Nathan M. Norton Jr., Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., by: Eric B. Estes, Asst. Atty. Gen., for appellee.

PAUL E. DANIELSON, Justice.

Appellants Bennett & DeLoney, P.C., and its shareholders, Michael Bennett and

Richard DeLoney, appeal from the circuit court's order granting appellee State of Arkansas partial summary judgment and denying Bennett & DeLoney's cross-motions for summary judgment, in which the circuit court found that the collection of amounts in excess of those set forth in Arkansas Code Annotated § 4-60-103 (Repl.2001) by a holder of a dishonored check violated the Arkansas Deceptive Trade Practices Act (ADTPA), codified at Ark.Code Ann. §§ 4-88-101 to -804 (Repl. 2001 & Supp.2011).[1] They further appeal from the circuit court's intermediate order, in which it found that section 4-60-103 provided an exclusive ⎮₂remedy for recovery on dishonored checks and that the use of remedies set forth in Ark.Code Ann. § 4-2-710 (Repl.2001), relating to a seller's incidental damages, was not permitted. Bennett & DeLoney assert three points on appeal, specifically, that the circuit court erred in holding that (1) the ADTPA applied to Bennett & DeLoney's provision of legal services; (2) Ark.Code Ann. § 4-60-101 et seq., was the exclusive remedy for recovery by holders of dishonored checks; and (3) the collection of amounts greater than those provided in Ark.Code Ann. § 4-60-103 was a violation of the ADTPA. We agree that the ADTPA has no application in the instant case, and we reverse and dismiss.

The facts are these. On April 8, 2008, the State, by Attorney General Dustin McDaniel, brought a consumer-protection action against Bennett & DeLoney, a Utah law firm, and Bennett and DeLoney, the owners and principals thereof, to redress and restrain alleged violations of the ADT-PA. The thrust of the complaint alleged that Bennett & DeLoney violated the ADTPA by attempting to collect penalties on dishonored checks greater than those amounts permitted by Ark.Code Ann. § 4-60-103.[2] The State sought an injunction, restitution, and the imposition of civil penalties for each violation of the ADTPA, as well as the State's costs and fees.

Bennett & DeLoney denied the allegations, and on November 21, 2008, the State moved for partial summary judgment, asserting that section 4-60-103 provided the exclusive ⎮₃remedy for collection on dishonored checks. Bennett & DeLoney responded and filed a cross-motion for partial summary judgment. In response, Bennett & DeLoney asserted that section 4-60-103 was not the exclusive remedy because the dishonored checks at issue also constituted breaches of contract, actionable under Article 2 of the Uniform Commercial Code. Pointing to Ark.Code Ann. §§ 4-2-709 and 4-2-710, they contended that those sections provided an incidental-damages remedy against a purchaser who failed to pay and constituted an alternative remedy. In reply, the State maintained its previous arguments. On July 28, 2009, the circuit court held a hearing on the cross-motions and granted partial summary judgment to the State; the circuit court's decision was later memorialized in its order of August 4, 2009, in which it found that section 4-60-103 provided an exclusive remedy for recovery on dishonored checks and that use of the remedies set forth in section 4-2-710 was not permitted.

---

1. In accord with the requirements set forth in Arkansas Rule of Civil Procedure 54(b)(2011), the circuit court issued a certificate making the requisite findings for certification of its order.

2. The complaint also alleged that Bennett & DeLoney failed to correctly identify debtors prior to initiating contact; contacted consumers about debts Bennett & DeLoney knew, or should have known, were not owed by the consumers; and refused to verify alleged debts upon consumers' requests.

On October 6, 2010, the State filed a motion for summary judgment, alleging that the actions taken by Bennett & DeLoney violated section 4–60–103, which the circuit court previously concluded provided the exclusive remedy for recovery on dishonored checks. Specifically, the State asserted that Bennett & DeLoney (1) failed to send their correspondence to Arkansas consumers via certified mail with return receipt; (2) requested and obtained damages or costs, in addition to the face value of the returned check, exceeding the $25 limit permitted by Arkansas law; (3) dunned and received payment from approximately 3,576 Arkansas consumers, overcollecting $361,698.27; and (4) violated the terms of the ADTPA.

DeLoney[3] filed separately his opposition to the State's motion and filed a cross-motion for summary judgment. DeLoney stated that Bennett & DeLoney discontinued its practice of collecting incidental damages over one year before the circuit court ruled that section 4–60–103 was the exclusive remedy. He further asserted that law firms and attorneys were not subject to the ADTPA and that even were they subject, the State failed to allege any unconscionable or deceptive conduct. He contended that no factual basis had been presented to show that he knew or should have known of any alleged ADTPA violations, but that the undisputed facts did show that he did not know, nor could have reasonably known, that section 4–60–103 would be declared the exclusive remedy for goods purchased with a check.

Bennett & DeLoney and Bennett also responded and cross-motioned for summary judgment. Like DeLoney, they maintained that the practice of law was not subject to the ADTPA. They further contended that a violation of section 4–60–103 was not a violation of the ADTPA. A hearing was ultimately held on the cross-motions by the circuit court on April 4, 2011. On May 24, 2011, the circuit court entered its order, granting partial summary judgment to the State and finding that the "collection of fees on dishonored checks in excess of those set forth in ARK. CODE ANN. § 4–60–103 is a violation of the ADTPA as applied to Bennett & DeLoney, P.C." The circuit court then denied summary judgment as to whether Bennett and DeLoney were personally liable, and it denied the cross-motions for summary judgment filed by DeLoney and Bennett & DeLoney and Bennett. After withholding any ruling as to whether the defenses of good faith, advice of counsel, or discontinuation of a business practice were available under the ADTPA, the circuit court issued a Rule 54(b) certificate. DeLoney and Bennett & DeLoney and Bennett filed separate notices of appeal from the circuit court's orders and now appeal.

## I. *Application of the ADTPA*

For this point, Bennett & DeLoney, Bennett, and DeLoney argue that the circuit court erred in its conclusion that the ADTPA applied to its provision of legal services. They point to this court's recent decisions, claiming that we have held the ADTPA has no application to the practice of law. The State counters that this court's prior decisions do not create absolute immunity for attorneys in violation of the ADTPA. It urges that our prior decisions are distinguishable and that the conduct undertaken by Bennett & DeLoney is not of the type traditionally regulated by this court.

---

**3.** DeLoney stated in his response that he resigned from Bennett & DeLoney in early 2009.

■ As a general rule, in reviewing the grant of a motion for summary judgment, the appellate court determines if summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *See DaimlerChrysler Servs. North America, LLC v. Weiss*, 360 Ark. 188, 200 S.W.3d 405 (2004). The appellate court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* The granting of this summary-judgment motion, however, was based on the circuit court's interpretation of section 4–60–103. The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *See id.*

■ The question presented here is whether the ADTPA had any application to the actions of Bennett & DeLoney in seeking to settle matters with Arkansas consumers on their clients' behalf. We hold that it did not. In *Preston v. Stoops*, 373 Ark. 591, 285 S.W.3d 606 (2008), this court held that the unauthorized practice of law fell within our constitutional authority to control and govern the practice of law, and we affirmed the circuit court's finding that the ADTPA did not apply to the practice of law. Likewise, in *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292,

372 S.W.3d 324, we again made clear that the ADTPA did not apply to the practice of law. While not cited by the parties, we further discussed the ADTPA's inapplicability to the practice of law in *Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, 381 S.W.3d 21.

In *Campbell*, we held that "*Stoops* thus stands for the proposition that the unauthorized practice of law is not cognizable under the ADTPA, where an *attorney* not licensed in Arkansas attempts to practice law in Arkansas." 2011 Ark. 157, at 8, 381 S.W.3d at 29. We then held that "where the General Assembly has seen fit to provide a cause of action when warranted for such activity by a nonlawyer, such as under the ADTPA, neither *Stoops* nor Amendment 28 precludes such action, as long as the legislation in no way hinders, interferes with, restricts, or frustrates the powers of the judiciary to define, regulate, and control the practice of law." *Id.* at 10–11, 381 S.W.3d at 30.

Simply put, the ADTPA has no application to the practice of law by attorneys. Here, Bennett & DeLoney was a law firm that was practicing law, while engaged in the practice of debt collecting. Neither Bennett & DeLoney, nor Bennett or DeLoney, dispute the fact that they were practicing law; to the contrary, they concede that they were and the State does not contest their concession.[4] Because the

---

4. Even if Bennett & DeLoney did not concede that it engaged in the practice of law, it is clear that it did. We have held that "the practice of law is not confined to services by an attorney in a court of justice; it also includes any service of a legal nature rendered outside of courts and unrelated to matters pending in the courts." *Judicial Discipline & Disability Comm'n v. Simes*, 2009 Ark. 543, at 7, 354 S.W.3d 72, 77 (quoting *Judicial Discipline & Disability Comm'n v. Thompson*, 341 Ark. 253, 263, 16 S.W.3d 212, 216 (2000)). Further, "[i]t is uniformly held that many activities, such as writing and interpreting wills, contracts, trust agreements and the giving of legal advice in general, constitute practicing law." *Clarendon America Ins. Co. v. Hickok*, 370 Ark. 41, 45, 257 S.W.3d 43, 46 (2007) (quoting *Arkansas Bar Ass'n v. Union Nat'l Bank*, 224 Ark. 48, 54, 273 S.W.2d 408, 412 (1954)). Here, the letters sent by Bennett & DeLoney on behalf of their clients stated explicitly that the letter was not a demand letter, but

a settlement offer to settle all potential claims our client may have against you for a lesser amount before this matter proceeds

firm and its attorneys were attorneys engaged in the practice of law at the time of the alleged acts, the ADTPA had no applicability to their actions under our decisions in *Stoops, Born,* and *Campbell.*

While the State avers that the fact that the instant action was brought by the Attorney General somehow precludes any application of the foregoing case law, we disagree. The allegations made by the State against Bennett & DeLoney were brought under the context of the ADTPA, which we have clearly held has no application to the practice of law by |8attorneys. For these reasons, the circuit court erred in concluding otherwise, and we reverse and dismiss. Because of our disposition on this issue, we need not address Bennett & DeLoney's remaining arguments.

Reversed and dismissed.

any further within our office.... It is our position that our client may pursue such damages under any or all of several possible claims, such as the uniform commercial code, other statutory law and/or common law. If permitted by your state, some of these potential claims may allow our client to recover its collection costs, attorney fees, and punitive or exemplary damages from you, totaling far more than the original purchase price.

Clearly, Bennett & DeLoney was rendering service of a legal nature to its clients by engaging in settlement negotiations; therefore, it engaged in the practice of law. *See, e.g., Kentucky Bar Ass'n v. Trumbo,* 26 S.W.3d 792 (Ky.2000); *In re Conduct of Devers,* 328 Or. 230, 974 P.2d 191 (1999).